## The General Accident, Fire & Life Assurance Corporation's Appeal. No. 1.

*Frederick H. Spotts*, for appellant.

*Abraham Wernick*, assistant city solicitor, contra.

SLOANE, J., April 1, 1938.—The General Accident, Fire and Life Assurance Corporation, Ltd., designated hereinafter as the insurance company, is a corporation incorporated under the laws of Great Britain, and since 1899 has qualified in Pennsylvania to carry on a general insurance business known as casualty, workmen's compensation, automobile liability, burglary, plate glass, accident, and health insurance.

In 1911, the insurance company entered into a written agreement with the Girard Trust Company, of Philadelphia, as trustee. Under this agreement, on December 31, 1936, the Girard Trust Company held in its deposit account securities of the insurance company with a value of over $7,250,000. These securities were assessed for taxation by the county personal property assessors under the Personal Property Tax Act of June 17, 1913, P. L. 507, as amended, 72 PS §4821. The assessment was made sometime between January 20, 1937, and January 25, 1937, in the name of "Girard Trust Company, Trustee for General Accident, Fire and Life Assurance Corporation, Ltd." Liability for the personal property tax as to these securities was denied and an application was made to the board of revision of taxes for correction of the personal property assessment, but this was refused. Thereupon an appeal was taken to this court: The General County Assessment Law of May 22, 1933, P. L. 853, sec. 518, 72 PS §5020.

The one question in this case is whether or not these securities are subject to the county personal property tax. The board of revision of taxes claims that they are, on the grounds: (a) That the trust company holds these securities "for the use, benefit or advantage of any other person or corporation"; and (b) that the manual situs of the securities is here in Pennsylvania, and that since the securities are within Pennsylvania they are subject to tax.

The contention of the insurance company is that the securities are not subject to the tax because: (a) The se-

curities have a situs outside the Commonwealth and are subject to tax only at the domicile of the owner, since they are intangibles; and (*b*) the insurance company already pays a gross premiums tax to the Commonwealth, and therefore its securities are exempt.

The pertinent provisions of the agreement are as follows:

1. The insurance company transferred to the trustee certain personal property to be held in trust by the trustee "and to hold the same for the protection of the policyholders of the 'insurance company' in the United States of America, as herein provided".

2. The fair value of the personal property so placed in trust with the trust company "shall never be less than the amount of a reserve fund sufficient to comply with the laws of the several States into which the 'insurance company' may now or in the future be admitted for the transaction of business."

3. The insurance company is to have through its agent the power to invest and reinvest its personal property and to have payment to itself made of all income derived therefrom, less certain commissions payable to the trustee.

4. The insurance company is to have control over the personal property except where a default is made by the insurance company in the payment of claims arising under any policy or policies of insurance issued by the insurance company after the claims are reduced to judgment, in which event or events the trustee is to apply the "trust fund or so much as may be necessary to the payment and satisfaction of such judgment within 30 days after application shall have been made to the trustee by the judgment creditors".

5. If at any time the principal of the "trust fund held for the benefit of the policyholders as its reserve shall be impaired to the extent of 25 percent thereof . . . then and in that case the trustee shall apply all the income of

said trust fund to making good the amount of such impairment until such impairment shall have been made entirely good, and until so made good, the investing and keeping invested of said trust fund, both as to principal and income, shall be vested exclusively and entirely in the discretion, control, and management of the trustee; and the trustee is hereby given full power and authority for that purpose."

6. If the insurance company ceases to do business, "the trustee shall apply said trust fund or so much thereof as may be necessary to the pro rata satisfaction of all lawful claims and demands of holders of outstanding policies issued by the 'insurance company' in the United States of America, and shall account for and pay over to the insurance company the balance of said trust fund."

Obviously, under this agreement the Girard Trust Company as trustee holds the securities for the benefit of the policyholders of the insurance company. Indeed, what other purpose could there be in placing these investments with the trust company other than to protect the policyholders of the insurance company? This is shown by the agreement itself, as seen from the provisions detailed herein, and as required by law: The Insurance Company Law of May 17, 1921, P. L. 682, sec. 601, 40 PS §721.

We think the securities therefore come directly within the provisions of section 1 of the Act of 1913, P. L. 507, 72 PS §482, as amended:

"That all personal property of the classes hereinafter enumerated . . . whether such personal property be owned, held, or possessed by such person or persons, co-partnership, unincorporated association, company, joint-stock company or association, limited partnership, bank, or corporation in his, her, their, or its own right, *or as active trustee, agent, attorney-in-fact, or in any other capacity, for the use, benefit, or advantage of any other person, persons, copartnership, unincorporated associa-*

*tion, company, joint-stock company or association, limited partnership, bank, or corporation,*—is hereby made taxable, annually, for county purposes, and, in cities coextensive with counties, for city and county purposes, at the rate of four mills on each dollar of the value thereof, and no failure to assess or return the same shall discharge such owner or holder thereof from liability therefor". [Italics supplied]

Are these securities held by the trust company as trustee, agent, or in any other capacity for the use, benefit or advantage of any other person or persons? Regardless of whether or not the trust company holds them for the benefit or advantage of the insurance company, it certainly holds them for the benefit or advantage of the policyholders of the insurance company and "Any agreement or contract in writing made by a person having the power of disposal over property, whereby such person agrees or directs that particular property or a certain fund shall be held or dealt with in a particular manner for the benefit of another, raises a trust in favor of such other person against the person making it": Cumberland County v. Lemoyne Trust Co., 318 Pa. 85, 95. The agreement here concerned is such an agreement.

Since the trust company holds these securities for the benefit or advantage of the policyholders, it is a trustee with duties to perform, and therefore the securities held by it in trust for the benefit of such policyholders are subject to the tax as provided for in the act.

We are cognizant that the insurance company pays annually a percentage of its gross premiums to the Commonwealth. But no attempt is here made to tax the stock of the insurance company owned by a taxable as in Opperman's Estate (No. 2), 319 Pa. 466, or in Arrott's Estate, 322 Pa. 367. The attempt here is to tax the securities *owned by* the insurance company in the hands of a trustee.

The appeal is dismissed.