Appeal of The Pennsylvania Company, etc.

490

*Saul, Ewing, Remick & Saul,* for appellant.

*F. Gilman Spencer,* for Commonwealth.

BOK, P. J., December 31, 1940.—This is an appeal from an assessment of a personal property tax for the year 1940 made by the Department of Revenue pursuant to the provisions of the State Personal Property Tax Act of June 22, 1935, P. L. 414, as last amended by the Act of May 5, 1939, P. L. 76, 72 PS §3244, upon the shares of certain foreign insurance corporations held in trust by appellant.

The matter was presented to me upon stipulation of facts and briefs of counsel.

### Findings of fact

1. Appellant, a Pennsylvania corporation having its principal place of business in the City and County of Philadelphia, is the active trustee of an investment trust in whose portfolio are shares of stock issued by 14 foreign insurance corporations licensed to do business and actually doing business in this Commonwealth.

2. These foreign insurance corporations pay a two percent gross premiums tax under the laws of this Commonwealth.

3. On January 29, 1940, appellant filed a personal property tax return for the year 1940, disclosing that it held these shares, which had a value of $42,922.25 as of January 1, 1940.

4. On January 30, 1940, the Department of Revenue assessed against appellant a personal property tax upon these shares in the amount of $171.97, pursuant to the State Personal Property Tax Act of 1935, as last amended by the Act of 1939, supra, and on January 31, 1940, gave notice of said assessment to appellant.

5. On March 4, 1940, appellant notified the Secretary of Revenue of its intention to file a petition for reassessment and at the same time petitioned the Department of Revenue for a reassessment praying that the taxes be stricken off.

6. The prayer of the said petition was denied by the Department of Revenue on March 6, 1940, and this appeal followed.

## Discussion

The issue is whether appellant, a resident corporate fiduciary holding as active trustee the shares of stock of various foreign insurance corporations licensed and actually doing business in Pennsylvania, may be compelled to pay a personal property tax on these shares under the State Personal Property Tax Act of 1935, as last amended by the Act of 1939, sec. 1, which imposes a tax of 4 mills upon all shares held by a resident in his own right or as active trustee, "except shares of stock in any . . . corporation . . . liable to . . . the capital stock tax or franchise tax imposed by section twenty-one of the act, approved the first day of June, one thousand eight hundred eighty-nine (Pamphlet Laws, four hundred twenty), and its amendments and supplements, for State purposes under the laws of this Commonwealth . . ."

Two questions must be decided. First, is the 1939 amendment to the State Personal Property Tax Act to be construed as imposing a tax upon the shares held by appellant? Secondly, if so, does the statute as last amended conform with the uniformity clause of article IX, sec. 1, of the Pennsylvania Constitution, the due process provisions of article I, sec. 9, of the Pennsylvania Constitution, and the equal protection clause of section 1 of the Four-

teenth Amendment to the Constitution of the United States?

A review of the legislative background of the Pennsylvania personal property tax is necessary.

Under section 1 of the Act of June 1, 1889, P. L. 420, persons resident in this State holding shares in any corporation, domestic or foreign, whether in their own right or as active trustee, were required to pay a personal property tax on these shares, except as to "shares of stock in any corporation . . . liable to the capital stock tax imposed by the twenty-first section of this act or relieved from the payment of tax on capital stock by said section". Section 21 of this act imposed a capital stock tax on both domestic and foreign corporations. Domestic insurance corporations were therefore subject to the capital stock tax. Foreign insurance corporations, however, were specifically excepted by section 21 from payment of the capital stock tax. Section 24 of the 1889 act imposed an 8-mills tax on the gross premiums of domestic insurance corporations and a two percent tax on the gross premiums of foreign insurance corporations. Subsequent amendments to the 1889 act made no changes in these provisions. From 1889 until 1913 the personal property tax was a State tax with part returned to the counties. In 1913 the State personal property tax was repealed and a county tax imposed.

The Act of June 17, 1913, P. L. 507, contained provisions similar to those of the repealed State tax, except that the exemption clause was changed to read, "except shares of stock in any . . . corporation . . . liable to a tax on . . . its capital stock for State purposes . . . or relieved from the payment of tax on its . . . capital stock for State purposes . . ." The capital stock and 8-mills gross premiums taxes on domestic insurance companies continued under the Act of 1889, as did the two percent gross premiums tax on foreign insurance companies.

In 1935, section 21 of the Act of 1889 was so amended as to impose a "franchise tax" on ordinary foreign cor-

porations, in lieu of the former capital stock tax, at the rate of 5 mills on a taxable value determined by formula: Act of May 16, 1935, P. L. 184, 72 PS §1871. In the same year, the State personal property tax was revived as a 1-mill tax on all shares of stock held by a resident, whether in his own right or as active trustee, "except shares of stock in any . . . corporation . . . that may be liable to a tax on . . . its capital stock for State purposes . . . or relieved from the payment of tax on its . . . capital stock for State purposes": Act of June 22, 1935, P. L. 414. The language of the exemption provision of the county personal property tax statute was thus adopted without change. The county personal property tax continued at the rate of 4 mills.

In Arrott's Estate, 322 Pa. 367 (1936), the Supreme Court held that the new "franchise tax" paid by foreign corporations was the equivalent of a capital stock tax and that shares in ordinary foreign corporations paying a franchise tax were not subject to the county 4-mill personal property tax. Since the language of the exemption provision in the county tax law was identical with that of the State tax law, the result of the decision was to exempt the shares of ordinary foreign corporations paying a franchise tax from the 1-mill State personal property tax as well.

In Miller's Estate, 330 Pa. 477 (1938), the court held that the State personal property tax did not apply to shares in foreign insurance companies because, under section 21 of the Act of 1889, foreign insurance corporations were "excepted" from the payment of a capital stock tax and, therefore, were "relieved" from it.

The Act of May 18, 1937, P. L. 633, amended the State personal property tax to eliminate the exemption of shares of corporations "relieved from" the payment of capital stock taxes, and the exemption provision then read: "except shares of stock in any . . . corporation . . . liable to a . . . capital stock or franchise tax for State purposes . . ."

In Girard Trust Company, Trustee's Appeal, 333 Pa. 129, 137 (1938), the Supreme Court said that the gross premiums tax paid by foreign insurance corporations was clearly the equivalent of a capital stock tax within the meaning of the exemption provisions and, therefore, "its [the foreign insurance corporation's] shares [were] within the exemptions of the personal property tax act."

Apparently as a result of this case, both county and State personal property tax statutes were so amended in 1939 as to exempt only "shares of stock in any . . . corporation . . . liable to . . . the capital stock tax or franchise tax imposed by section twenty-one of the act, approved the first day of June, one thousand eight hundred eighty-nine (Pamphlet Laws, four hundred twenty), and its amendments and supplements, for State purposes under the law of this Commonwealth . . .": State Personal Property Tax Act of May 5, 1939, P. L. 76, sec. 1, 72 PS §3244; Act of June 19, 1939, P. L. 413, 72 PS §4821. Both State and county taxes are now 4-mill taxes, totaling 8 mills if both are to be paid.

Appellant contends that the recent amendments can be interpreted as exempting all shares in corporations liable to a capital stock tax or franchise tax under section 21 of the Act of 1889, and its amendments, or a tax "equivalent" thereto. This seems to be precisely the construction which the legislature sought to circumvent by the 1939 act. The Supreme Court construed the former provision relating to capital stock taxes paid "for State purposes" to include the gross premiums tax paid by foreign insurance corporations; in its opinion the latter tax was the equivalent of a capital stock tax "for State purposes". The legislative purpose to tax clearly appears in the 1939 amendment. Only shares in corporations paying a capital stock tax or franchise tax under section 21 of the 1889 act are exempt from the State and county personal property taxes. Foreign insurance corporations, if they pay a tax equivalent to a capital stock or franchise tax, do not pay such tax under section 21 of the Act of 1889, but

under section 24. To accord shares of foreign insurance companies their former exemption would be to rewrite the plain language of the 1939 act and to ignore the only conceivable purpose of the legislature in enacting it.

Thus we are confronted directly with the constitutional question. Article IX, sec. 1, of the Pennsylvania Constitution provides:

"All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax . . ."

Article I, sec. 9, of the Pennsylvania Constitution prohibits the deprivation of one's property "unless by . . . the law of the land."

Section 1 of the Fourteenth Amendment to the Constitution of the United States provides that "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws".

The rule is well established that the uniformity clause of the Pennsylvania Constitution and the equal protection clause of the Fourteenth Amendment to the Federal Constitution are to be construed alike with regard to permissible classification for tax purposes, at least as regards classification according to kind or quality (as distinct from classification based on volume or quantity). As stated in Commonwealth v. Girard Life Ins Co., 305 Pa. 558, 562 (1932) : "That which would violate one would generally contravene the other." As to what constitutes a valid basis of classification under these constitutional provisions, the court approved in Schoyer et al. v. Comet Oil & Refining Co., 284 Pa. 189, 197 (1925), the rule that:

" 'Classification cannot be made arbitrarily . . . [it] must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis . . .' "

In Commonwealth v. Girard Life Ins. Co., supra, at p. 562, the court suggested:

"Is there such a difference between the entity taxed and the one not levied upon, with relation to the act in respect to which classification is proposed, as justified the legislature in fixing the classes which it did?"

In brief, in order that a classification be reasonable, some significant difference must exist between the subjects of taxation which would justify the legislature in treating them differently for tax purposes.

Regarding the question of classification between foreign and domestic insurance corporations, the present rule would appear to be that foreign insurance companies *already within the jurisdiction* may not be subjected to discriminatory State taxation on the sole ground that they are foreign corporations: Southern Ry. Co. v. Greene, 216 U. S. 400 (1910); Hanover Fire Ins. Co. v. Harding, 272 U. S. 494 (1926); Metropolitan Casualty Ins. Co. v. Brownell, 294 U. S. 580 (1935); Girard Trust Company, Trustee's Appeal, supra. Identical taxes need not be imposed, but unless the total of State taxes imposed upon domestic corporations is substantially or fairly equal to the total imposed upon similar foreign corporations, there is an unconstitutional discrimination against the latter: Concordia Fire Ins. Co. v. Illinois, 292 U. S. 535, 547 (1934). In order to be "within the jurisdiction", it would appear sufficient that a foreign corporation, properly licensed, be doing business in the Commonwealth, without regard to the value of its fixed and permanent property situated here or to the volume of business transacted here: Girard Trust Company, Trustee's Appeal, supra, at pp. 139-140; cf. Metropolitan Casualty Ins. Co. v. Brownell, supra, at p. 583. If differences exist other than that of the domicile of the corporation, the fact that the latter circumstance gives rise to these differences does not render the discrimination arbitrary and unreasonable.

The Germania Life Ins. Co. of N. Y. v. Commonwealth, 85 Pa. 513 (1877), has been cited by the Commonwealth for the contrary position. The Pennsylvania Supreme

Court there held (p. 519) that, "under the 9th art. of the new constitution, the legislature has power to classify the subjects of taxation, and that foreign insurance companies may be placed in a class by themselves, and distinct from domestic insurance companies, and may be taxed independently and differently."

In my opinion the Germania case is not the law today. It is to be noted in this regard that the Germania case apparently was decided under the now outdated doctrine of Paul v. Virginia, 8 Wall. (U. S.) 168 (1869), which accorded the foreign corporation a bastard status elsewhere than in the State of its incorporation. The court there held that the recognition of the foreign corporation's existence was purely a matter of comity, that it might be excluded from transacting business in other States, and that permission to do business in another State might be conditioned on such terms as that State saw fit to impose. Although Paul v. Virginia is not cited in the Germania opinion, a careful reading of the opinion of the lower court, affirmed per curiam, clearly indicates that it was considered controlling. Since Southern Ry. v. Greene, supra, and Hanover Fire Ins. Co. v. Harding, supra, Paul v. Virginia no longer has been recognized as law. If the Pennsylvania uniformity clause and the equal protection clause of the Fourteenth Amendment are to be interpreted alike, and counsel for all parties are agreed that they are, since our State Supreme Court has so declared, the Germania case is no longer authority, although it has never been expressly overruled. The Pennsylvania Supreme Court unequivocally recognized the doctrine in Arrott's Estate, supra, and in Girard Trust Company, Trustee's Appeal, supra, that the State legislature may not constitutionally discriminate against foreign corporations already within the jurisdiction merely because they are foreign, and although Chief Justice Kephart, in the Girard Trust Company case, failed to mention the Pennsylvania uniformity clause, his declaration that it would violate the due process and equal protection clauses of the

498

State Constitution contains the unavoidable conclusion that such discrimination is not permitted by the uniformity clause. If the legislature had the power to discriminate against foreign corporations under the uniformity clause, it necessarily follows that there would be no violation of due process or any denial of equal protection of the laws. See Commonwealth v. Pennsylvania Threshermen & Farmers' Mutual Cas. Ins. Co., 339 Pa. 62, 63 (1940). In sum, the Supreme Court of Pennsylvania, by unmistakable implication, has also denied that the holding of the Germania case is to be recognized as sound even under the State Constitution.

Because of the great stress laid by counsel for appellant upon the issue of discriminatory classification between foreign insurance corporations and other foreign corporations, I should note in passing that I cannot agree that any basis for invalidating the 1939 act exists on this account. Classification between foreign insurance corporations and other foreign corporations is as permissible as classification between domestic insurance corporations and other domestic corporations. The great economic differences which exist between an insurance business and a manufacturing enterprise, for example, are precisely the factors which give rise to the constitutional power to treat them differently. The Supreme Court of Pennsylvania has already upheld classifications between different types of insurance businesses: Commonwealth v. Girard Life Ins. Co., supra (stock and mutual companies) ; Commonwealth v. Pennsylvania Threshermen & Farmers' Mutual Cas. Ins. Co., supra (mutual casualty and mutual life and fire insurance companies).

Similarly, I do not attach the same significance to double taxation as does appellant. The so-called rule against double taxation in this State is merely one of statutory construction and not a principle of constitutional law. As stated in Commonwealth v. Fall Brook Coal Co., 156 Pa. 488 (1893), ". . . the legislature has power to impose double taxation, provided it is done in

such manner as to secure the uniformity which the constitution requires." Moreover, even though the gross premiums tax has been declared to be the equivalent of a capital stock tax (which has been broadly considered in the nature of a property tax) within the former exemption provisions, if viewed as a tax upon the *privilege* of doing business within the State, it is arguable that no double taxation is involved by the imposition of a *property* tax upon the shares of the foreign corporation. In any event, in light of the express intent of the legislature, the doctrine loses its application.

Insurance companies may be classified generally according to:

1. *Authority to do business:* Licensed and unlicensed companies.

2. *Capital structure:* Stock and mutual companies.

3. *State of incorporation:* Domestic and foreign corporations.

4. *Type of business done:* Life, fire, surety, casualty, and marine insurance companies.

Unlicensed companies include only foreign companies, since domestic companies must obtain a license upon incorporation. Since unlicensed companies pay no taxes to the Commonwealth, the taxability of their shares has not been controverted. All the shares assessed in the instant case are shares in foreign insurance corporations licensed to do business in Pennsylvania.

Since mutual insurance companies do not issue shares, the tax does not affect them. Only stock companies are involved in the instant controversy.

The fourth group appears to be of no significance for present purposes, since the personal property tax statute does not discriminate between shares on this basis.

The real controversy centers in the third basis of classification, apparently the one adopted by the legislature.

In Girard Trust Company, Trustee's Appeal, supra, at p. 140, the Supreme Court declared that there is no

fundamental difference between foreign and domestic insurance corporations of similar types, or in their relations with the State. As previously noted, the legislature cannot constitutionally discriminate against foreign insurance corporations for that reason alone. The same taxes need not be imposed on both corporations, but the total tax burden must be substantially equal. Otherwise there is present an unconstitutional discrimination.

On the basis of the annual recurring taxes to which domestic and foreign insurance corporations are subject, the following comparison may be made:

*Gross Premiums Tax:* Domestic insurance companies are liable to an eight-mills tax on the gross amount of premiums, premiums deposits, and assessments received from business transacted within the Commonwealth. Foreign insurance companies are liable to a tax of two percent on the gross premiums of every character and description from business done within the Commonwealth within the preceding calendar year. The differences in allowable deductions are insignificant for present purposes: Act of June 1, 1889, P. L. 420, sec. 24.

*Capital Stock and Franchise Taxes:* Domestic insurance corporations pay a capital stock tax of five mills: Act of 1889, sec. 21, as amended by section 1 of the Act of May 16, 1935, P. L. 184; foreign insurance corporations pay neither a "capital stock tax" nor a "franchise tax".

*Corporate Net Income Tax:* Domestic stock life insurance companies (except beneficial and limited life), fire and casualty (except surety) companies are now subject to a temporary seven percent tax. Foreign life, fire, and casualty companies registered to do business within the State are exempt. Both foreign and domestic surety, beneficial life, and limited life insurance companies are exempt. Apparently both foreign and domestic marine insurance companies have been treated by the Department of Revenue as similarly exempt: Corporate Net Income Tax Act of May 16, 1935, P. L. 208, as amended and

reënacted by the Act of April 8, 1937, P. L. 227; see Stradley and Krekstein, Corporate Taxation and Procedure in Pennsylvania §238 (1940).

*Corporate Loans Tax* (assuming taxable evidences of indebtedness are issued) : Domestic companies must pay the tax for the owner of the indebtedness. Foreign companies must pay the tax for the owner only if the corporation has a locally resident treasurer. However, the security upon which the tax is paid becomes exempt from a personal property tax in the hands of the owner. This is nothing but a personal property tax collected at the source where that is possible: State Personal Property Tax Act of June 22, 1935, P. L. 414, as amended by the Act of May 5, 1939, P. L. 76.

If the tax in dispute is upheld, holders of shares in domestic insurance companies need pay no personal property tax on these shares, since the issuing corporation is liable to a capital stock tax under section 21 of the Act of 1889, but holders of shares in foreign insurance companies must pay an eight-mill (combined county and State) tax on these shares, since the gross premiums tax paid by these companies, if equivalent to a franchise or capital stock tax, is paid not under section 21 of the Act of 1889 but under section 24.

In determining the aggregate State tax burden imposed on domestic and foreign insurance corporations, it is evident that the corporate loans tax need not be considered, since it contains no discriminatory features. It is true that the tax can be collected from foreign corporations only if there be a locally resident treasurer; but it is also true that the security upon which the tax is paid becomes exempt in the hands of the owner. Any apparent discrimination is thus eliminated.

As to the corporate net income tax, certain foreign insurance companies are exempt from the tax, whereas similar domestic insurance companies are subject to it. However, both foreign and domestic surety, beneficial life, and limited life insurance companies are exempt.

Since many of the shares assessed in the present case are in this latter group, and since the corporate net income tax is merely a temporary tax which expires at the end of the year 1940, it seems that this also may be eliminated from further consideration.

On the basis of the remaining taxes aside from the challenged personal property tax, domestic insurance corporations are subject to the 8 mills gross premiums tax, plus the 5 mills capital stock tax, and foreign insurance corporations are subject to the two percent gross premiums tax.

Even if the 1939 amendment is to be viewed as an additional burden on foreign insurance corporations, there is some doubt whether under the present State tax system foreign insurance corporations are being subjected to discriminatory and oppressively heavier burdens. It is difficult to weigh taxes of different kinds and qualities against each other. Were the question entirely an open one, in view of the usual reluctance of both the State Supreme Court and the Supreme Court of the United States to invalidate State tax impositions, and in view of the presumption of constitutionality which attaches to a tax statute, it would seem that the issue of oppression and inequality would have to be resolved in favor of the Commonwealth.

However, the Supreme Court of Pennsylvania has already determined this issue. In Girard Trust Company, Trustee's Appeal, supra, at p. 137, the Supreme Court declared:

"We therefore conclude that the gross-premium tax of two per cent is equivalent to the capital stock and premium tax paid by other insurance companies within the spirit and purpose of the exemption provisions."

Speaking of the provision in the 1937 act exempting "corporations liable to a capital stock tax for State purposes" from paying any personal property tax on securities owned by them in their own right, the court stated (p. 140):

"The nature of foreign insurance corporations makes a capital stock tax impracticable and the legislature has chosen the gross premiums tax as the best method of equalizing the tax burden of the foreign corporation with that of the domestic insurance corporation. To impose upon a foreign insurance corporation . . . *an entirely separate and additional tax*, from which domestic insurance corporations are expressly exempt, would be *burdening the former with an oppressive and arbitrary disadvantage, not justified by any fundamental difference in the two types of corporations, or in their relations with the State.* Such an arbitrary discrimination would clearly violate the equal protection clause." (Italics supplied.)

Although the court decided only that the shares involved were not subject to the tax because exempt from taxation by the provisions of the taxing statute as construed, the portions of the opinion quoted above were not entirely unnecessary to the decision, since the court stated that to hold otherwise would render the statute unconstitutional and the court would not give it this interpretation while a constitutional construction was possible.

Thus, according to the Supreme Court of Pennsylvania, prior to the 1939 enactment foreign and domestic insurance corporations bore an equal tax burden. This conclusion may find historical justification in the fact that for at least 50 years, from 1889, until 1939, the taxing statutes exempted shares in both domestic and foreign insurance companies from any liability to a personal property tax. Thus it is arguable that during this period of time the tax burden on the two types of corporations was considered to be substantially equal. Any additional burden imposed solely upon foreign insurance corporations would appear to constitute an unconstitutional discrimination against them.

The amicus curiæ has devoted considerable space in his brief to show that a tax on the shares of a foreign insurance corporation actually is a burden on the corporation itself. He points out that the Pennsylvania share tax, Act of July 15, 1897, P. L. 292, although technically a tax

on the shareholders (Schuylkill Trust Co. v. Pennsylvania, 302 U. S. 506 (1938)), is administered as if the corporation were the taxpayer. Moreover, the personal property tax statute itself exempts from tax the "shares of stock in any . . . corporation liable to a tax on its shares . . ." and the corresponding provision relieving the corporation provides that ". . . corporations liable to a tax on their shares . . . shall not be required to . . . pay any *further tax*, under this section, on the mortgages, bonds and securities owned by them in their own right . . ." (Italics supplied.)

It is urged that the tax on the shares is really an additional burden on the corporation; and from the provision in the personal property tax statute in question exempting shares in corporations paying a capital stock or franchise tax under section 21 of the Act of 1889 it would appear that the legislature considered the tax on the shares as an additional burden on the corporation, inasmuch as the immunity of the shareholder is dependent upon the tax liability of the corporation.

Viewed as an additional burden on the issuing foreign insurance corporation, since domestic insurance corporations are not so burdened, and since the State Supreme Court has declared that prior to the 1939 act both foreign and domestic insurance corporations were bearing equal tax burdens, the tax imposed by the act would appear to constitute an invalid discrimination against foreign insurance corporations.

Even if the imposition is viewed as a tax on the shareholder, the same result obtains. Since the legislature may not discriminate between domestic and foreign insurance corporations for that reason alone, it is obvious that it may not discriminate between holders of shares in similar insurance corporations solely on the basis of the State of incorporation. In Arrott's Estate, supra, the Supreme Court declared (p. 373):

"If we should hold that while the stockholder in a domestic corporation whose property is employed in the state is not required to pay a personal property tax but

that the holder of stock in a foreign corporation, whose property is similarly employed, is required to pay such tax, both types of shares being held by residents, manifestly there would be created an unwarranted schism in classification of stocks held by residents."

It may be observed further that even were it permissible to classify between the issuing corporations and to impose different tax burdens, which is not this case, even then it is questionable whether it necessarily would follow that the holders of shares in these respective corporations could be classified similarly for personal property tax purposes. The differences providing the basis for classification of taxes on the corporations conceivably may bear no relation to any classification of personal property taxes on their shareholders.

From the foregoing the challenged tax must be declared invalid as contravening the uniformity clause of article IX, sec. 1, and also the due process clause of article I, sec. 9, of the Pennsylvania Constitution.

As noted earlier, the substantive law of classification under the equal protection clause of the Fourteenth Amendment is identical with that under the Pennsylvania uniformity clause. In recent years the Supreme Court of the United States has imposed an unusually severe rule of burden of proof upon appellant. This is absent from the cases decided under the Pennsylvania Constitution. If it were literally applied it would be almost impossible in the ordinary case for a taxpayer effectively to challenge State tax legislation under the Federal equal protection clause. See Metropolitan Casualty Ins. Co. v. Brownell, supra, at p. 584, and Madden v. Kentucky, 309 U. S. 83 (1940). As stated in the Madden case, supra, at p. 88, the rule is that "The burden is on the one attacking the legislative arrangement to negative every conceivable basis which may support it." As respects the Federal Constitution, the validity of the tax depends on whether appellant has established a case showing the positions of foreign and domestic corporations and of their shareholders to

be so similar as to preclude the assumption that the classification rests upon some rational basis within the knowledge and experience of the legislature. Were it not for the express declaration of the Pennsylvania Supreme Court in Girard Trust Company, Trustee's Appeal, supra, wherein it is stated that an additional tax burden would "not [be] justified by any fundamental difference in the two types of corporations, or in their relations with the State", and that "such an arbitrary discrimination would clearly violate the equal protection clause", it is doubtful that appellant would be held to have met its burden of proof. The issue already having been resolved by our State Supreme Court, whose finding we accept in the absence of any controverting evidence, the 1939 amendment must be invalidated as also contravening the equal protection clause of the Fourteenth Amendment to the Constitution of the United States.

### Conclusions of law

1. The State Personal Property Tax Act of June 22, 1935, P. L. 414, as last amended by the Act of May 5, 1939, P. L. 76, insofar as it seeks to impose a personal property tax upon resident holders of shares in foreign insurance corporations already within the jurisdiction while exempting from taxation resident holders of shares in similar domestic corporations, is unconstitutional and void inasmuch as it contravenes the uniformity provisions of article IX, sec. 1, of the Constitution of Pennsylvania, constitutes a deprivation of property contrary to "the law of the land" as guaranteed by article I, sec. 9, of the Constitution of Pennsylvania, and operates as a denial of the equal protection of the laws as guaranteed by section 1 of the Fourteenth Amendment to the Constitution of the United States.

2. The classification of insurance corporations as domestic corporations and foreign corporations licensed and actually doing business in Pennsylvania, insofar as such classification forms the basis for imposing different tax

burdens on the two types of corporations, solely because of the difference in the State of their incorporation and not justified by any fundamental difference in the two types of corporations or in their relations with the State, is an arbitrary, unreasonable, and improper classification.

3. The personal property tax imposed by the State Personal Property Tax Act of 1935, as last amended by the Act of 1939, upon resident holders of shares in foreign insurance corporations already within the jurisdiction and exempting from taxation resident holders of shares in similar domestic insurance corporations, viewed as a burden on the issuing foreign insurance corporation, imposes an oppressive and arbitrary disadvantage upon foreign insurance corporations which contravenes the equal protection clause of section 1 of the Fourteenth Amendment to the Constitution of the United States.

4. The personal property tax imposed by the State Personal Property Tax Act of 1935, as last amended by the Act of 1939, upon resident holders of shares in foreign insurance corporations already within the jurisdiction and exempting from taxation resident holders of shares in similar domestic insurance corporations, is an unreasonable, arbitrary, and invalid discrimination against shareholders in foreign insurance corporations and violates the uniformity provisions of article IX, sec. 1, of the Constitution of Pennsylvania, constitutes a deprivation of property contrary to "the law of the land" as guaranteed by article I, sec. 9, of the Constitution of Pennsylvania, and operates as a denial of the equal protection of the laws as guaranteed by section 1 of the Fourteenth Amendment to the Constitution of the United States.

5. Appellant may not constitutionally be compelled to pay the personal property tax assessed against it for the year 1940, pursuant to the provisions of the State Personal Property Tax Act of 1935, as last amended by the Act of 1939, on the shares of stock in foreign insurance corporations held by it.

6. The appeal must be sustained and the tax assessment stricken off.

*Decree nisi*

And now, December 31, 1940, the appeal of The Pennsylvania Company for Insurances on Lives and Granting Annuities, Trustee for Deposited Insurance Shares, Series B, from the assessment of personal property tax for the year 1940 in the amount of $171.97 made by the Department of Revenue of the Commonwealth of Pennsylvania, is sustained and the assessment is hereby stricken off.