## Commonwealth, Appellant, *v.* Union Trust Company of Pittsburgh.

Argued May 26, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Frank A. Sinon,* Deputy Attorney General, with him *Claude T. Reno,* Attorney General, for appellant.

*Arthur H. Hull* and *Geo. Ross Hull,* with them *Wm. A. Seifert, Reed, Smith, Shaw & McClay, Roy J. Keefer* and *Snyder, Hull, Leiby & Metzger,* for appellee.

OPINION BY MR. JUSTICE STERN, June 29, 1942:

The question on this appeal is the value of the shares of stock of the Union Trust Company of Pittsburgh for the purpose of taxation for the year 1935 in accordance with the Act of June 13, 1907, P. L. 640, as amended by the Acts of July 11, 1923, P. L. 1071, May 7, 1927, P. L. 853, and May 31, 1933, P. L. 1132. The Department of Revenue found the market value of the capital, surplus and undivided profits of the company to be $123,671,512 and the taxable value of the shares $110,560,929, and fixed the tax at $552,804. On appeal to the Dauphin County Court the taxable value of the shares was reduced to $23,660,919, and the tax to $118,304. There were no disputed appraisements of assets or liabilities, the difference between the results reached by the department and the court being accounted for wholly by a difference in the treatment of so-called "exempt" securities.[1] The Dauphin County Court allowed deductions of $13,110,583 for shares of stock of Farmers Deposit National Bank and Mellon National Bank, $2,145,000 for shares of stock of Federal Reserve

---

[1] It is not strictly accurate to speak of "exempt" securities, because *none* of the securities held by the company is directly taxed. Certain securities are exempt only in the sense that they are excluded in determining the taxable value of the shares.

Bank of Cleveland, $9,031,694 for shares of stock of Farmers Deposit Trust Company, Union Fidelity Title Insurance Company and Union Savings Bank of Pittsburgh, $75,657,567 for United States bonds and notes and other federal securities, and $65,749 for shares of stock of Gimbel Brothers, Inc., and Pennroad Corporation, all of which securities formed part of the invested assets of the Union Trust Company. Only the first item, that of the national bank stocks, had been allowed as a deduction by the Department of Revenue. The Commonwealth appeals from the judgment of the Dauphin County Court, its contention being that the company did not show, as to some of these items, that they represented investments of its capital stock, surplus and undivided profits as distinguished from investments of moneys received by it on deposit, and that therefore no deductions of such items should have been allowed.

Notwithstanding all the litigation which has involved construction of the Act of 1907 and its amendments—four cases in this court[2] and two of these in the Supreme Court of the United States[3]—confusion evidently persists as to the reason for using a method of apportionment to ascertain the deductions allowable for exempt securities in accordance with the provisions of this tax legislation.

The Act of 1907 provided that the shares of the title companies and trust companies therein referred to should be assessed for taxation "at the rate of five mills upon each dollar of the actual value thereof, the actual value of each share of stock to be ascertained and fixed by adding together the amount of capital stock paid in, the surplus and undivided profits, and dividing this

---

[2] *Commonwealth v. Hazelwood Savings & Trust Co.*, 271 Pa. 375, 114 A. 368; *Commonwealth v. Schuylkill Trust Co.*, 315 Pa. 429, 173 A. 309; *Commonwealth v. Provident Trust Co. of Philadelphia*, 319 Pa. 385, 180 A. 16; *Commonwealth v. Schuylkill Trust Co.*, 327 Pa. 127, 193 A. 638.

[3] *Schuylkill Trust Co. v. Pennsylvania*, 296 U. S. 113; *Schuylkill Trust Co. v. Pennsylvania*, 302 U. S. 506.

amount by the number of shares." This act gave rise to no particular difficulty either of interpretation or enforcement, since it required nothing more than an appraisement of the assets and liabilities of the taxpaying corporation. The amending acts, however, of 1923, 1927, and 1933 introduced into the situation the element of exempt securities, the shares being now assessed for taxation "at the rate of five mills upon each dollar of the actual value thereof; the actual value of each share of stock to be ascertained and fixed by adding together so much of the amount of capital stock paid in, the surplus, and undivided profits as is not invested in shares of stock of corporations liable to pay to the Commonwealth a tax on shares; or as is not invested in such portion of the capital stock of corporations liable to pay to the Commonwealth a capital stock tax as the capital stock of such corporation employed within this Commonwealth and liable to a capital stock tax bears to the total capital stock of such corporation; or as is not invested in such portion of the capital stock of corporations specifically relieved under the laws of this Commonwealth from the payment of a capital stock tax as the capital stock of such corporation employed within this Commonwealth and relieved from the payment of a capital stock tax bears to the total capital stock of such corporation,—and dividing this amount by the number of shares." [4]

By this amendatory legislation two problems were created: (1) Must a deduction be made from the tax base for national bank stocks and United States bonds and notes and other federal securities owned by the company? (2) How can it be ascertained which of the securities held by the company are investments of capital stock, surplus and undistributed profits and which are investments of moneys received from depositors?

---

[4] By the Act of July 28, 1936, (Spec. Sess.) P. L. 73, the exemptions introduced by the acts amending the Act of 1907 were abolished and the tax base restored as in the original act.

The first of these questions was settled in the two *Schuylkill Trust Company* cases—315 Pa. 429, reversed 296 U. S. 113; 327 Pa. 127, affirmed 302 U. S. 506—it being held that national bank stocks owned by the company could not be included in the base or measure of a tax to its shareholders because these stocks had already been taxed to the company as owner under the Act of July 15, 1897, P. L. 292, and its amendments, as permitted by R. S. 5219 as amended, U. S. C. A. title 12, section 548; but in regard to federal securities, since the tax under the Act of 1907 was on the shares and not on the capital stock of the company, the only requirement was that they be not discriminated against but be given the same exemption accorded non-federal securities.

The second of the questions raised by the amendments of the Act of 1907 is the one with which we are now confronted. Assuming that a trust company has in its portfolio stocks of corporations which are exempt under those amendments, and also federal securities which must be given the same exemption, how is it to be determined whether the investments in such securities are of the capital stock, surplus, and undivided profits or of the deposits? If the permanent investments, such as real estate, mortgages, stocks and bonds as distinguished from short-term loans and commercial paper, are less in amount than the capital stock, surplus and undivided profits, they may safely be assumed to be investments of the company's net assets, since it is more likely that the company would invest its own resources in such securities than that it would so invest deposits payable on demand. A real problem arises, however, when the permanent investments exceed the amount of the capital, surplus and undivided profits, because it then necessarily follows that some unknown portion of the deposits has been invested in such securities. Even in that event it may be possible to prove in some instances that certain securities were in fact investments

of capital, surplus or undivided profits, and, if such securities be exempt, they would then be properly deductible from the company's net assets and thereby excluded from the tax base. Thus in the present case the Dauphin County Court found that the evidence definitely established that the stocks of the national banks, Federal Reserve Bank of Cleveland, Farmers Deposit Trust Company, Union Fidelity Title Insurance Company and Union Savings Bank of Pittsburgh were all capital stock investments, and therefore, in computing the tax base, the court deducted them wholly from the capital stock, surplus and undivided profits. The Commonwealth does not now complain of those deductions. There was no such proof, however, in regard to the stock of Gimbel Brothers, Inc., and Pennroad Corporation, which together had a market value of $523,312 (of which $178,227 was liable to tax in Pennsylvania), and United States bonds and notes and other federal securities, which had a market value of $192,865,200, and here a method of apportionment was adopted by the court[5] to which the Commonwealth now objects, although it finds no fault with the terms of the apportionment formula if the principle of apportionment is held to be proper.[6]

What is the theory underlying the use of the apportionment formula? It is an error to suppose, as the Commonwealth apparently does, that a trust company has two distinct funds, one made up of its net assets and the other of moneys received from depositors. The amount of its net assets, constituting its capital, surplus and undivided profits, is a bookkeeping balance obtained by subtracting its liabilities from its gross assets; it is the shareholders' equity in the assets of the

---

[5] The calculation of the deduction for these securities by the application of the formula employed by the court will be found in 50 Dauph. 266, 299-302.

[6] Because the Commonwealth is not questioning the treatment given by the court to the item of "appreciation in United States securities" we express no opinion in regard thereto.

company. Ordinarily, investments are made indis-
criminately from the company's general or gross assets,
and therefore any specific item of securities cannot be
allocated as an entirety, in the absence of actual proof
justifying such allocation, to either the company's net
assets or its investments of deposits. When there is
deducted from the gross assets the amount owed to
depositors, and the net assets are thereby ascertained,
it is only the latter, not the investments of deposited
moneys, which constitute the tax base.[7] It must there-
fore be determined how much of the exempt securities
remain in the net assets after the deposits (and there-
fore all investments of the deposits) have been thus
deducted from the total assets. In other words, such
exempt securities as were investments of deposits hav-
ing been excluded by the deduction of the deposits, it
is necessary to purge the net assets of the remainder of
the exempt securities. Since, however, it would ordi-
narily be impossible for either the Commonwealth or
the company to demonstrate what amount of exempt
securities has been thus excluded and what amount
remains, it is necessary, if the provisions of the tax-
ing statute are to be enforced, to adopt the presump-
tion—normally no doubt corresponding to the fact—
that the exempt securities are spread between the net
assets and the deposits in the same proportion as *all*
the permanent investments are so spread, it being as-
sumed, for the reason previously mentioned, that where
the permanent investments exceed the total of capital,
surplus and undivided profits these net assets are wholly
invested in the permanent investments and only the
excess of the permanent investments represents invest-
ments of deposits. The apportionment formula is merely
the method by which this presumption is given practical

---

[7] Thus in the present case the gross assets were appraised at a
market value of $383,294,012. From this amount were deducted lia-
bilities of $259,622,500, leaving $123,671,512 as the net assets of the
company constituting its capital, surplus and undivided profits.

effect. In general, it ascertains the ratio which the net assets bear to the total permanent investments and applies that ratio to the exempt securities.[8] It makes it reasonably certain that no exempt securities are included in the tax base, but, on the other hand, does not result in any improper diminution of that base. If the Commonwealth's contention were accepted that the company must affirmatively show which of its holdings were investments of its net assets, none of the deductions required by the taxing statute could be made in most instances, because, as already stated, investments are ordinarily made by the company from all of its funds and not from any segregated portion thereof.

Not only is the apportionment method adopted in this case required in order to implement the statute under which the tax is levied, but it received the sanction of the Department of Revenue itself over a course of years extending from the time of the adoption of the amendments of the Act of 1907 to the year 1934. It has also been approved several times by this court. In *Commonwealth v. Hazelwood Savings & Trust Co.*, 271 Pa. 375, 114 A. 368, the court below held that the exempt securities should be deducted from the amount of capital stock, surplus and undivided profits even though it had not been shown that they represented investments only of net assets. On appeal the Commonwealth, contrary to its position in the present case, urged that the apportionment method should be approved by this court,

---

[8] Stated in greater detail, the formula is as follows: A fraction is constructed of a numerator consisting of the capital, surplus, undivided profits and reserves, determined by the book value of the assets, less the book value of those shares, if any, for which deduction has been made wholly therefrom, and a denominator consisting of the book value of the permanent investments, less the book value of those shares, if any, for which deduction has been similarly made. This fraction is multiplied by that portion of the market value of the exempt shares which is liable to pay a tax to the Commonwealth or which is relieved by the laws of the Commonwealth from the payment of a tax.

and its appeal was sustained. True, it was said (p. 378) : "Since the company did not prove its purchase of these securities out of capital stock account, the Commonwealth might, perhaps, have refused to allow any deduction whatever," but this was merely a suggestion to the company that it ought to be satisfied as the Commonwealth might have raised the question thus indicated, as to which the court expressed no opinion. In *Commonwealth v. Schuylkill Trust Co.*, 315 Pa. 429, 173 A. 309, the court below adopted the method of apportionment approved in the *Hazelwood* case, and this time it was the trust company which appealed, claiming that the exempt securities should have been deducted wholly from the value of the capital stock, surplus and undivided profits. This contention was rejected. In *Commonwealth v. Provident Trust Co. of Philadelphia*, 319 Pa. 385, 180 A. 16, the court below again applied the apportionment method and the Commonwealth appealed, taking the position that no deduction of exempt securities should have been allowed because the company had not affirmatively shown that such securities were investments of capital, surplus and undivided profits. This court affirmed the action of the court below, but on the theory that, while the company had the burden of showing that the exempt securities represented invested capital, surplus or undivided profits, the burden was sustained if the securities in question appeared "inherently as a part of the capital stock structure" or were "earmarked and set up as made out of the capital account". In *Commonwealth v. Schuylkill Trust Co.*, 327 Pa. 127, 193 A. 638, the apportionment formula adopted by the court below was not attacked, the only issue being the proper treatment to be given to federal securities and shares of national bank stocks. In the opinion of the court (p. 134) the question suggested in the *Hazelwood* case was again referred to. That question—whether, if the company failed to establish that the exempt securities were investments of net assets, the Commonwealth might refuse to allow any deduction whatever—is raised flatly in the

present case and we now hold that it is not be be solved by fixing the burden of proof, because such burden placed on either party would make it impossible to carry out the provisions of the taxing statute, but that, in the absence of proof establishing the identity of the funds or accounts invested in the exempt securities, the apportionment method employed in this case is the proper one by which the tax base is to be determined.

Gimbel Brothers, Inc., and Pennroad Corporation are foreign corporations which are liable to pay to the Commonwealth, not a capital stock tax as such, but a franchise tax under the Act of May 16, 1935, P. L. 184. As the Act of 1907 and its amendments do not provide for an exemption of stocks of corporations liable to pay a franchise tax eo nomine, the Commonwealth argues that no deduction should have been allowed for the stocks of these two corporations. While, in *Commonwealth v. Columbia Gas & Electric Corp.*, 336 Pa. 209, 8 A. (2d) 404, it was pointed out that the tax under the Act of 1935 is not a capital stock tax, being levied on a franchise or privilege and not on property or capital of the corporation, that case did not impair the ruling in *Arrott's Estate*, 322 Pa. 367, 185 A. 697, that there was such a close identity between the capital stock tax and the franchise tax that the owners of shares of stock in foreign corporations which paid the franchise tax were not obliged to pay a personal property tax on such shares, it being the general policy of the State to avoid double taxation. If, in accordance with *Arrott's Estate,* an individual holder of shares of stock of a foreign corporation paying a franchise tax under the Act of 1935 is not obliged to pay a personal property tax on such shares, it would seem inconsistent and illogical to hold that the stockholders of a trust company owning such shares should be subjected to tax because of such ownership. The payment of the franchise tax by foreign corporations is, as far as the principle here involved is concerned, analogous to the payment of the capital stock tax by domestic corporations, and double taxation would result

in the one case as in the other if the shares were not excluded from the tax base to the extent provided by the Act of 1907. It is not to be presumed that such double taxation was intended by the legislature. It is the character rather than the nominal designation of the franchise tax which is here controlling.

Judgment affirmed.