### CITY COUNCIL OF ANDERSON v. FOWLER.

1. CHARTER OF CITY OF ANDERSON—APPEAL—19 STAT., 950—20 STAT., 103.—The act of 1887 (19 Stat., 950,) and of 1888 (20 Stat., 103), amending the charter of the city of Anderson, by which no appeal is provided from the decisions of the mayor or of the city council to a superior court, are in violation of sec. 24 of art. 4 of the Con. of 1868, and, therefore, void.

2. TRIAL BY JURY—MUNICIPAL CHARTER.—A municipal charter is not unconstitutional because it does not provide a trial by jury for offenders against its ordinances.

3. ALDERMAN—JUROR—JURY.—Aldermen of a city are not disqualified to sit as a jury in hearing an appeal from the mayor to the city council, as provided by its charter.

4. ALDERMAN—JUROR—MAYOR—CASE DISTINGUISHED.—An alderman who, acting as mayor *pro tem.*, convicted a party of violating a city ordinance, is not competent to sit as a juror with the council in hearing an appeal from such decision to the full council. *State* v. *Williams*, 31 S. C., 338, distinguished.

5. JUROR—JURY—PRESUMPTION.—When a person acts as a juror, the presumption is he did his duty, and voted on all questions coming before the jury.

6. TRIAL BEFORE CITY COUNCIL OF ANDERSON.—Under the charter of the city of Anderson, when a defendant appeals from the decision of the mayor to the full council, the hearing must be *de novo*.

Before EARLE, J., Anderson, February, 1896. Reversed.

The defendant, S. M. Fowler, was convicted by Alderman Hill, acting mayor, of violating the ordinances of the city of Anderson. He appealed to the full council, which sustained the decision. He appealed to the Court of General Sessions for Anderson County. This Court sustained the judgment below. From thence he appeals to this Court.

*Messrs. Bonham & Watkins*, for appellant, cite: *Trial*

*by jury:* 1 Cr. Law Mag., 488. *Competency of juror:* 30 Mo., 494; 139 Mass., 315; 143 Miss., 136. *Transactions in jury room: State* v. *Sullivan,*    , Clark's Crim. Code, 476.

*Messrs. Tribble & Prince* and *Solicitor Ansel,* contra, cite: *Presumption:* 19 Ency., 459; 1 Hill, Eq., 369; Rich. Eq. Cases, 122; 14 S. C., 43.

Nov. 24, 1896. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. The "Case" as prepared for argument here contains the following statement of facts: "The appellant was convicted by Alderman Hill, acting mayor of the city of Anderson, on the 26th day of May, 1895, of the offense of selling intoxicating liquors against the ordinance of the said city of Anderson. The defendant appealed to the full council. The hearing of said appeal was had on June 22, 1895, and after hearing appellant's written grounds of appeal, all testimony *de novo,* that was offered *pro* and *con,* and argument by counsel, council affirmed the ruling and decision of the mayor *pro tem.,* found defendant guilty, and affirmed the sentence imposed by the said mayor *pro tem.* Whereupon the defendant appealed to the Court of General Sessions upon the exceptions herewith filed. The appeal came on to be heard at February term, 1896, of general sessions for said county, before his Honor, Judge Joseph H. Earle, who passed the order hereto attached, dismissing the appeal. In the course of the argument, the presiding Judge said to appellant's counsel: 'If you can show me that Alderman Hill voted as a juror, I will grant you a new trial.' Whereupon appellant's counsel answered: 'It is not incumbent upon us, we submit, to show that he did vote. We have no means of knowing certainly whether or not he did. Our contention is that we are entitled to a reversal of the judgment because he sat with the council and may have voted.' To this Judge Earle replied: 'In the absence of any showing to the contrary, the Court must assume that a public officer did his

duty, and that Alderman Hill did not vote on the facts while hearing the appeal.'"

It also appears in the "Case" that at the hearing of the appeal by the city council, the following were present: Mayor Tolly; Aldermen Hill, Duckett, Ligon, Dillingham, and Fant. The following apparently contradictory statement is also found in the "Case:" "Defendant's attorneys objected to Alderman Hill sitting on this case, he having tried the case as mayor *pro tem.* City attorney asked defendant's attorneys in open court if they objected to Alderman Hill sitting in this case. Defendant's attorneys declined to answer."

The exceptions, for the purposes of this appeal, may be stated sbustantially as follows: 1st. That the act of 1887, amending the charter of the city of Anderson, granted by the act of 1882, as well as the act of 1888, amending the said act of 1887, are unconstitutional, in that they violate the provisions of the Constitution securing the right of trial by jury. 2d. Because the said acts are unconstitutional, in that they violate the provisions of the Constitution securing to the defendant a fair and impartial trial, because the city council sat as judge and jury in a case in which they were the prosecutors. 3d. Because the said acts are unconstitutional, because they provide that the city council shall sit as judge and jury in a case in which they are interested. 4th. Because the Circuit Judge erred in not holding that it was error for Alderman Hill to sit in council while hearing an appeal from a judgment rendered by him as acting mayor. 5th. Because his Honor erred in holding that it was incumbent upon the defendant to show that Alderman Hill voted in determining the appeal from his own judgment. 6th. Because his Honor erred in not holding that it was error for Mayor Tolly to sit at the hearing of the appeal by the council, he having been absent when the case was originally heard by Alderman Hill, as acting mayor. 7th. Because his Honor erred in not holding that it was error on the part of council to affirm the decision of the

mayor in the first case, there being no record of the evidence taken at such trial nor of the rulings there made, upon which council could predicate its action affirming the decision of the mayor, whereas council could only try the case *de novo.*"

Upon the argument in this Court, counsel for respondent, for the first time, has raised the point, that the Court of Sessions had no jurisdiction to hear the appeal from the judgment of the city council, and, therefore, the Circuit Judge should have dismissed defendant's appeal upon that ground, without regard to its merits. Although this point was not raised in the Circuit Court, yet it may still be taken here for the first time (*State* v. *Penny*, 19 S. C., 218), and, if tenable, it will not only be decisive of this case, but will supercede the necessity for considering any of the points raised by appellant in his exceptions. Indeed, if the Circuit Judge had no jurisdiction to hear the appeal, then this Court would have no jurisdiction to consider whether the points which he undertook to decide were properly decided or not, and any utterance of this Court as to such points would be not only extra-judicial but improper. It becomes necessary, therefore, first to determine this question of jurisdiction. The ground upon which the counsel for respondent bases his position, that the Court of Sessions has no jurisdiction to hear an appeal from any decision of the city council of Anderson, is that there is no provision for such an appeal either in the charter of that city or in any of the amendments thereto. The first inquiry, therefore, is, what are the provisions of the charter of the said city in respect to the trial of offenders against the ordinances passed by the city council? The original charter will be found in the act of 1882, 17 Stat., 972, and in the 6th section of that act it is provided: "That the said mayor, or the city council, and both of them, are hereby vested with all the powers and jurisdiction, for the violation of city ordinances, as is now given a trial justice, except in civil cases;" and the section proceeds to invest the

mayor with power to try all offenders against the ordinances of the city, and to impose upon such offenders, in his discretion, fine or imprisonment within the limits prescribed by the ordinances; giving to any person, aggrieved by the decision of the mayor, the right of appeal to the city council. The 7th section of the charter authorizes the city council to "fix and impose fines and penalties for the violation of the ordinances of the city," "not to exceed the sum of $100, or imprisonment for thirty days;" and the 8th section authorizes the mayor to sentence persons convicted of violation of any of the ordinances of said city to a fine or imprisonment in the alternative, as may be provided. Under provisions such as these, it is quite clear that a person brought to trial before the mayor or the city council, for a violation of any of the ordinances of the city, would have a right to a trial by jury, if demanded, as well as a right of appeal to the Circuit Court, just as in a case tried by a trial justice. *Beaufort* v. *Ohlandt*, 24 S. C., 158; *Lexington* v. *Wise*, 24 S. C., 163, recognized and followed in the recent case *Ex parte Brown*, 42 S. C., 184. But by the act of 1887, 19 Stat., 950, the original charter was amended by striking out section 6 thereof, and substituting, in lieu thereof, the following as section 6: "The said mayor shall have power and authority to try all offenders against the ordinances of said city, in a summary manner, without a jury. * * * Whenever the said mayor shall find a party tried before him guilty of violating an ordinance of the said city, he shall have power to impose, in his discretion, fine or imprisonment in the alternative, not to exceed the limits prescribed for such violation. From all decisions of the said mayor any party in interest, feeling himself aggrieved, shall have the right of appeal to the city council: provided, he give notice of such appeal. * * * In all cases appealed to the city council the mayor shall preside, or some alderman, as hereinbefore provided, and the aldermen shall sit as a jury to try the facts involved, and may also reverse, modify or affirm any or all of the rulings of the mayor in

the first trial of the case." And by the act of 1888, 20 Stat., 103, the charter was still further amended, "by adding thereto the following section, to be known as section 6a, to follow section 6 of said act, to wit: Section 6a. In any case tried under the foregoing section, upon appeal to the full council, the mayor and three aldermen, or in the absence or inability of the mayor to serve, any four aldermen shall be sufficient to proceed with the trial of such cause on appeal, and the decision of a majority of those present shall determine all questions before the said council, except the questions of fact involved, in which the mayor who tried the case shall have no vote, but shall be determined by a majority of the aldermen trying the case: provided, that, in case of a tie vote of the aldermen on the facts involved, the mayor shall have the casting vote, and the decision of the majority, as thus ascertained, shall determine the case." The purpose of the amendment of 1887 doubtless was to avoid the effect of the decisions of this Court in the cases of *Beaufort* v. *Ohlandt*, and *Lexington* v. *Wise, supra*, then recently rendered, by which it was determined, that where the municipal authorities of any incorporated city or town were invested with the powers of a trial justice for the trial of offenders against the ordinances of such city or town, the effect was to give the accused the right to a trial by a jury, if demanded, and also the right of appeal to the Circuit Court. Hence, by the act of 1887, section 6 of the original charter, conferring upon the municipal authorities of the city of Anderson the "powers and jurisdiction" of a trial justice in the trial of offenders against the ordinances of said city, was stricken out, and a new section was substituted in lieu thereof, investing the mayor of the city with power to try all offenders against the ordinances of said city "in a summary manner, without a jury," with the right of appeal—not to the Circuit Court—but to the city council. It being now contended that, inasmuch as no right of appeal *to the Circuit Court* is provided for by the act of 1887, no such appeal can be allowed, it becomes necessary to

consider what is the effect of the failure to provide for such appeal, upon the constitutionality of that act. So far as I am informed, this is the first time that this particular question has been presented, though there are at least two cases in which it might have been raised, *Ex parte Schmidt*, 24 S. C., 363, and *City Council* v. *O'Donnell*, 29 S. C., 355. But in neither of those cases was the question raised or decided. In the former—Schmidt's case—it seems to have been conceded that there was no right of appeal, while in the latter—O'Donnell's case—the right of appeal to the Circuit Court was conceded, and the appeal was heard and determined, in a case arising under the same charter now before us, though no question as to the right of appeal was raised, considered or decided. The question is, therefore, still an open one. Inasmuch as the offense charged against the defendant was committed before the adoption of the present Constitution, and his trial and conviction both before the acting mayor as well as before the council, occurred before the present Constitution went into effect, the question here presented must be determined by the provisions of the Constitution of 1868, and not by those of the present Constitution. In sec. 19, of art. I., of that Constitution, it is provided that "all offenses less than felony * * * shall be tried summarily before a justice of the peace or other officer authorized by law * * * saving to the defendant the right of appeal;" and in sec. 24, of art. IV., the provision is, that in all cases tried by a justice of the peace, "the right of appeal shall be secured under such rules and regulations as may be provided by law." Now, as that Constitution, in sec. 1 of art. IV., expressly authorizes the General Assembly to "establish such municipal and other inferior courts as may be deemed necessary," and as it has been decided in the case of the *State* v. *Fillebrown*, 2 S. C., 404, that the municipal and other inferior courts authorized by that section to be established, practically stand upon the same footing as a court of a justice of the peace, it seems clear that any attempt by the General Assembly to estab-

lish a municipal or other inferior court, without saving the right of appeal, would be in conflict with the Constitution. From this, it follows that both the act of 1887 and the act of 1888, above referred to, in failing to save the right of appeal, as required by the provisions of the Constitution, above quoted, are in conflict with the Constitution, and cannot be allowed the force of law. If this be so, then it follows that the powers of the municipal authorities of the city of Anderson, in trying offenders for violations of the ordinances of the city, must be derived from the original charter—the act of 1882, above referred to—conferring upon such authorities the powers and jurisdiction of trial justices, which, as has been shown, involve not only the right of trial by jury, if demanded, but also the right of appeal to the Circuit Court. If it should be said that the provision in sec. 6 of the act of 1887, as amended by the act of 1888, authorizing a person convicted by the mayor to appeal to the city council, is a compliance with the constitutional provision saving the right of appeal, the answer is, that such is not the character of the appeal contemplated by the Constitution. The object of that constitutional provision was to secure the right of appeal from *any* inferior court to some superior court, and the provision in the act for an appeal from one inferior court to another inferior court, certainly does not fulfill the requirement of the Constitution. Every municipal court, no matter how constituted— whether consisting of the mayor of the city or of the city council—established under the authority of sec. 1, of art. IV., of the Constitution, is certainly an inferior court, and to give the right of appeal from the municipal court, consisting of the mayor alone, to another municipal court, consisting of the city council, would be merely giving the right of appeal from one inferior court to another inferior court, from which there would still be the right of appeal, and thus the object of the constitutional provision "saving the right of appeal" would be practically defeated. If, again it should be said that this Court, in the case of the *City*

*Council of Anderson* v. *O'Donnell, supra,* has recognized the constitutionality of the acts of 1887 and 1888, amending the original charter of the city of Anderson, the answer is, that in that case the only question (as far as this matter is concerned) which this Court was called upon to consider, and the only question which it did consider, was whether those acts were in violation of the constitutional provisions securing a right of trial by jury, but whether those acts were in violation of any other provisions of the Constitution, this Court was not called upon to consider, and did not consider. Under the well settled, wise, and salutary doctrine, that a court should never voluntarily and unnecessarily assail the validity of an act of a co-ordinate branch of the government, but should wait until its validity is assailed, by some party to the cause, which it is called upon to determine, this Court, in that case, did not look, and should not have looked, all around to see if there was any possible ground upon which the constitutionality of those acts might be assailed, but confined its attention to the only ground upon which they were attacked, to wit: that they violated the provisions of the Constitution securing the right of trial by jury. The fact, therefore, that this Court, in O'Donnell's case, held that the acts of 1887 and 1888 were not in conflict with those provisions of the Constitution securing the right of trial by jury, cannot affect the question which is now, for the first time, raised, whether these acts conflict with other provisions of the Constitution, securing the right of appeal from the judgments of all inferior courts. As was said in *Whaley* v. *Gaillard,* 21 S. C., at page 576, where the Court was considering a similar question: "A statute which conflicts with *any* provision of the Constitution is a dead letter, an absolute nullity, and the fact that the Courts have decided in one case that it does not conflict with a particular clause in the Constitution, cannot impart any vitality to it, if it is found to be in conflict with some other clause of the Constitution. * * * In *Boyd* v. *Alabama,* 94 U. S., 645, which is recognized in

*Douglas* v. *County of Pike*, 101 *Id.*, at page 687, as well expressing the rules which properly govern Courts in respect to their past adjudications, it is said: 'Courts seldom undertake, in any case, to pass upon the validity of legislation where the question is not made by the parties. Their habit is to meet questions of that kind when they are raised, but not to anticipate them. Until then, they will construe the acts presented for consideration, define their meaning, and enforce their provisions. The fact that acts may, in this way, have been often before the Court, is never deemed a reason for not subsequently considering their validity, when that question is presented. Previous adjudications upon other points do not operate as an estoppel against the parties in new cases, nor conclude the Court upon the constitutionality of the acts, because that point might have been raised and determined in the first instance.'" It must, therefore, be concluded that the position taken by counsel for respondent—that the appellant had no right of appeal to the Circuit Court—is untenable, and must be overruled.

This being so, it becomes necessary to consider the points raised by the appellant's exceptions. The first exception, raising the point that the acts of 1887 and 1888, purporting to amend the act of 1882, are unconstitutional, because they are in conflict with these provisions of the Constitution securing the right of trial by jury, cannot be sustained, as that point was made and decided in the case of *City Council* v. *O'Donnell, supra,* adversely to the view contended for by the appellant.

The second and third exceptions may be considered together, as they both rest upon the principle that the Constitution forbids the trial of a case by a tribunal—whether Judge or jury—where one or all of those constituting such tribunal is a party to the cause or interested therein. The position of appellant is based upon the assumption that the city council, and all the members thereof, are not only parties to, but interested in, every prosecution brought for a violation of any of the ordinances

of the city. But is this assumption well founded? All prosecutions for violations of the laws of the State are brought in the name of the State, which consists of all of its citizens, and yet it was never supposed that any citizen was thereby disqualified from serving as a juror upon the trial of such prosecution. So, also, it has always been held that the corporators of a municipal corporation are not thereby disqualified from serving as jurors in cases brought by or against such corporations. *City Council* v. *King*, 4 McC., 487; *City Council* v. *Pepper*, 1 Rich., 364; 1 Dillon on Mun. Corp., sec. 360, and authorities there cited. So, in *State* v. *Billis*, 2 McC., 12, it was held that it was no objection to a juror, on the trial of an indictment for passing a counterfeit bill on the bank of the State of South Carolina, that he was a director of the bank, for he has no other interest in the institution than that which is common to all the citizens of the State. Exceptions two and three must, therefore, be overruled.

The point raised by exception four raises a more serious question. There seems to be no doubt that a person who, as a juror—even as a grand juror—has previously passed upon the facts of a case, is not competent to sit as a juror upon a subsequent trial of the same case. In Bishop on Crim. Proc., at sections 773 and 774, this matter is discussed, and the rule is laid down that a person who served as a member of the grand jury, which found the bill, is not competent to serve as a petit juror upon the trial of the accused under such indictment. The same doctrine has been recognized in this State, in the case of the *State* v. *O'Driscoll*, 2 Bay, 153. It is true, that, in that case, it was held that the objection, not being made until after verdict, came too late, but the rule was distinctly recognized, that the fact that a person offered as a juror had been one of the grand jury which found the bill, was a good cause of challenge. The case of the *State* v. *Williams*, 31 S. C., 238, cannot be regarded as in conflict with this view, for in that case the jurors were objected to upon the ground that

they had served as jurors in a previous case, involving the same facts, were examined on their *voir dire*, and had satisfied the Circuit Judge that they had formed no opinion as to the case then in hearing, and were not conscious of any bias or prejudice therein, and it was held by the late Chief Justice Simpson, who delivered the opinion of the Court, manifestly with reluctance, that, under the provisions of sec. 2261 of the Gen. Stat., the Circuit Judge was made the final arbiter in the matter, and his conclusion could not be impeached. But one of the Associate Justices expressly dissented from the view taken by the Chief Justice as to this matter, and the other Associate Justice concurred in the result only, and as there were other grounds upon which the new trial was granted, in which the whole Court concurred, it is impossible to say what was the view of the majority of the Court as to this particular question. Besides, in that case the jurors objected to were examined on their *voir dire*, and it was upon that alone that the Chief Justice based his view, while here Alderman Hill was not examined on his *voir dire*, and hence it is clear that case cannot be regarded as decisive of this. Now, in this case, it is distinctly stated in the "Case," as prepared for argument here, that defendant's attorneys objected to Alderman Hill sitting on this case, upon the ground that he had previously tried the case as mayor *pro tem.* It is true, that this statement is followed by the further statement that when the city attorney asked defendant's attorneys if they had objected to Alderman Hill sitting in this case, they declined to answer. Exactly what this means, it is difficult to say. It may be that defendant's attorneys, having made their objection, did not feel called upon to reply to such an inquiry. At all events, the inference is plain that the objection was made, and that is sufficient. If, therefore, Alderman Hill participated in the trial of this case, he must have done so as a juror, even under the provisions of the act of 1887, as amended by the act of 1888, for in no other capacity could he have had the right to participate in

the trial, inasmuch as the mayor was present and presided at the trial; and if so, under the authorities above cited, he was clearly incompetent to serve as a juror. The fourth exception must, therefore, be sustained.

As to the fifth exception, it is only necessary to say that it is difficult to conceive by what authority the privacy of the jury room—so-called—could be invaded with a view to ascertain whether any one of those acting as jurors voted upon any question of fact or of law. If Hill acted as a juror, as he must have done, then it was his duty to vote upon questions of fact as well as of law, and the presumption is that he did so. This exception must, therefore, be sustained.

The sixth exception must be overruled. The act under which the trial was manifestly conducted expressly requires that the mayor, if present, should preside—and he was present.

The seventh exception cannot be sustained. In the first place, the record before us does not show whether the evidence taken at the first hearing before the mayor *pro tem.*, was or was not in writing, nor does it show what was before the council at the second hearing. In the second place, this Court has held, in the case of *City Council* v. *O'Donnell, supra,* that "in all cases appealed to the city council, the trial must be *de novo,* and the witnesses must be examined before the council just as though there had been no previous trial." Under this ruling, it is difficult to perceive either the necessity or propriety of bringing before the council either the evidence taken at the trial before the mayor or the rulings thereon.

The remaining exceptions not being insisted upon, require no further notice.

It is proper to add, that no little embarrassment has been felt in the preparation of this opinion, arising from the fact that, while none of the exceptions filed by appellant raises the point upon which the acts of 1887 and 1888 have been hereinbefore held to be unconstitutional, yet as that point

has been raised by the respondent's jurisdictional objection, it became necessary to consider that point, and, in disposing of it, the conclusion was reached that those acts, while not in conflict with those provisions of the Constitution securing the right of trial by jury, yet they were in conflict with other provisions of the Constitution securing the right of appeal from the inferior courts to the Circuit Court. The legitimate result of the conclusion thus reached would be to hold that the case should have been tried by the municipal authorities as trial justices, and, not having been so tried, the judgment rendered should, on that ground, be set aside.     But as that point was not raised by any of the appellant's exceptions, it was deemed best to consider the points which were so raised, without regard to the question as to the validity of the acts of 1887 and 1888, with a view to ascertain whether, even assuming the validity of these acts, there was any error in the judgment appealed from.

The judgment of this Court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for such further proceeding as may be necessary.