## Arrott's Estate.

Argued May 19, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, LINN, STERN and BARNES, JJ.

368

*Thomas E. Whitten,* for appellant.

*William A. Wilson,* with him *James M. Houston,* for appellee.

*Ella Graubart,* with her *Patterson, Crawford, Arensberg & Dunn,* for trustees, amici curiæ.

*John Y. Scott,* with him *Edward Friedman,* Deputy Attorney General, and *Charles J. Margiotti,* Attorney General, for Commonwealth, amicus curiæ.

OPINION BY MR. CHIEF JUSTICE KEPHART, June 26, 1936:

The County of Allegheny claimed from the Estate of James W. Arrott, Jr., deceased, personal property taxes on stock held by decedent in the American Radiator and Standard Sanitary Company, a corporation of the State of Delaware. The county states that upward of $3,000,-000 will come into the treasury from this and other taxables if its claim is sustained. The court below held the shares could not be taxed under the personal property tax act because the company must pay the franchise tax

imposed on foreign corporations by the Act of May 16, 1935, P. L. 184.

As there are a number of Acts involved in this question, we will call the Act of May 16, 1935, P. L. 184, imposing a franchise tax on foreign corporations, the "Franchise Tax Act"; the Act of June 22, 1935, P. L. 414, imposing a one mill state tax on personal property, the "One Mill State Act"; the Act of June 17, 1913, P. L. 507, imposing a four mill county tax on personal property, the "Four Mill County Act"; and the Act of 1889, P. L. 420, Sec. 21, imposing a capital stock tax on foreign corporations, the "Capital Stock Tax Act."

The question to be determined is whether resident owners of stock of foreign corporations subject to the Franchise Tax Act are required to pay the four mill personal property tax imposed by the Four Mill County Act. The question is precipitated by the substitution of a franchise tax on foreign corporations for the privilege of doing business in this State for the capital stock tax heretofore exacted by the Capital Stock Tax Act. Both the Four Mill Act and the One Mill State Act subject *all* stocks owned by residents to a tax, but specifically exclude shares of stock held in a corporation liable for a tax on its capital stock for state purposes. Since, under the Capital Stock Tax Act, foreign corporations paid a tax on that portion of their capital stock located within the state, the shares of such corporations in the hands of resident holders were not subject to the four mill personal property tax. If, because of the exchange of a franchise tax for a capital stock tax the holders of foreign shares are required to pay the four mill county tax, they will also be required to pay the one mill state tax. To uphold appellant's contention would mean that the resident shareholder of a foreign corporation will be trebly taxed, first, by the county, second, by the state, and, third, by the state again through the franchise tax paid by the corporation upon the basis of its capital stock, while the resident holder of a domestic corpora-

tion's shares does not pay any state or county personal property tax.

This appeal raises directly only the question stated above but necessarily involves the one mill state tax on personal property. So far as the state tax is concerned, Attorney General Margiotti, acting within his powers as the legal advisor of the Commonwealth, instructed the Department of Revenue that shares of foreign corporations liable to a franchise tax were not subject to the one mill state tax, and directed that office to exclude such property from taxation. Our examination of the question convinces us that the Attorney General's conclusion applies equally as well to the four mill county tax and that the decree of the court below is in strict accordance with the policy of this Commonwealth and our prior law relating to taxation.

The settled rule of this Commonwealth has been against double taxation. With respect to the imposition of a personal property tax on shares of a corporation subject to a capital stock tax, we stated in *Commonwealth v. Shenango Furnace Co.*, 268 Pa. 283, 285, that the policy against double taxation forbade taxation of the shares. "The policy arose out of the recognized identity of the capital stock and the shares composing it as one and the same subject, so that the taxation of the one is the taxation of the other and that to tax both would amount to double taxation." See also *Commonwealth v. Penna. R. R. Co.*, 297 Pa. 314. An intent to impose double taxation will not be presumed: *Fidelity Co. v. Loughlin*, 139 Pa. 612. The presumption of law is against it and continues until overcome by express words of the legislature showing such intent. Since the legislature declared against taxing the stock of foreign corporations while they were taxed under the Capital Stock Tax Act, if there is no substantial difference between the tax imposed by the Franchise Tax Act and that previously imposed by the Capital Stock Tax Act, to hold that the substitution of the former for the latter makes these

shares taxable would be in direct violation of this settled policy.

While appellant contends that the franchise tax on foreign corporations is essentially a new and different tax from the capital stock tax hitherto imposed, upon careful scrutiny we find that there is a close identity between the two. When the Franchise Tax Act is construed with the phrase in the Four Mill Tax Act ("except shares of stock in any . . . corporation . . . liable to a . . . tax on its shares or its capital stock for state purposes . . ."), it does not subject foreign corporations' shares to the payment of personal property tax because that corporation is liable for what is, in effect, a tax on capital stock. What the legislature intended was this, that where a corporation paid a five mill tax, as domestic corporations do, on the same or similar property engaged in the state, the shareholders of stock of such corporation so paying should not be required to pay a personal property tax. The property included within the folds of the Franchise Tax Act embraces the same elements upon which the Capital Stock Tax Act was based. True it is that "capital stock tax" is a distinctive term, as is the term "franchise tax." But in considering the collateral matter with which we are here concerned, namely, whether the holders of shares of a corporation which pays a franchise tax are subject to a personal property tax, we are not bound by the fact that the one is denominated a property tax and the other a franchise tax, nor can we refuse to consider the subject matter of the tax imposed on the corporation, regardless of the term by which it is called. These elements have a direct bearing on the character of the tax as well as on our policy against double taxation and must be considered in the decision of the problem with which we are confronted.

The Franchise Tax Act is stated by the legislature to be an amendment to the Capital Stock Tax Act. Section 21 (b) of the Franchise Tax Act imposes upon foreign corporations a tax of five mills upon a taxable value

to be determined in the following manner: "The actual value of its *whole capital stock* of all kinds, including common, special, and preferred, [is to] . . . be ascertained in the manner prescribed in the . . . act, and shall then be divided into three equal parts." The sections which follow set out the method of apportionment. While the act is denominated a franchise tax for the privilege of doing business in the state, in arriving at the sum to be paid at the rate of five mills, of prime importance is the total value of the capital stock.

In effect, therefore, while the Capital Stock Tax Act purported to levy a tax directly on the property, and the Franchise Tax Act purports to tax a privilege measured by capital stock through the use of a formula, both employ the same subject matter as a base. The reason for the change in the method of computation is clear and is entirely apart from any desire on the part of the legislature to tax as personal property shares of stock in foreign corporations. The old method of measuring the capital stock of foreign corporations doing business in this Commonwealth was unsatisfactory and produced an unfair result. To reach a more equitable measurement of the base for these corporations as compared with domestic corporations, the legislature concluded that a different standard was necessary. This finds expression in the formula contained in the Franchise Tax Act, which takes into consideration the ratio of tangible assets in use in this State to all other tangible assets, together with other factors such as payroll and gross receipts. While the rate thereon remains the same, a new method has been adopted for calculating the proportion of the capital assets which is to be taxed by this state at the rate of five mills. As regards the totally collateral matter, namely, the personal property tax on individuals who hold shares of foreign corporations, there is, in our opinion, sufficient relation in nature between the Capital Stock Tax Act and the Franchise Tax Act as to require us to hold that the Franchise Tax Act

imposes a capital stock tax within the meaning of the provisions of the Four Mill County Tax Act and the One Mill State Tax Act excepting property from those taxes. Our conclusion is fortified by the fact that in a number of places in Section 21 of the Franchise Tax Act the legislature refers to it as taxation on the capital stock.

To hold otherwise might result in discriminatory classification. A contrary decision would mean that while the shareholders in foreign corporations would be subject to the personal property taxes, the owners of shares in domestic corporations would be relieved therefrom. We have stated above that while double taxation is not favored in this state, it is within the power of the legislature to so decree. In *Commonwealth v. Fall Brook Coal Co.,* 156 Pa. 488, 495, this court said: "The legislature has power to impose double taxation, provided it is done in such manner as to secure the uniformity which the constitution requires. It cannot be done arbitrarily in a given case, but it may be done if the whole class to which the subject belongs is subjected to the burden in substantially the same manner." If we should hold that while the stockholder in a domestic corporation whose property is employed in the state is not required to pay a personal property tax but that the holder of stock in a foreign corporation, whose property is similarly employed, is required to pay such tax, both types of shares being held by residents, manifestly there would be created an unwarranted schism in classification of stocks held by residents. We see no substantial difference in the subject matter of the tax which shows that the legislature intended to create a situation wherein resident holders of stock in domestic corporations continued untaxed by the personal property tax laws while the resident holders of stock in foreign corporations became subject to such taxes.

Decree affirmed.