## Murray et ux. *v.* Philadelphia et al.

158

Argued February 7, 1950. Before MAXEY, C. J., LINN, STERN, STEARNE and JONES, JJ.

*Albert Barnes Zink,* with him *George F. Shinehouse, Jr.,* for plaintiffs and interveners.

*Abraham Wernick,* Assistant City Solicitor, with him *Frank F. Truscott,* City Solicitor, for defendants.

*J. Harry LaBrum,* with him *Lewis Weinstock* and *Conlen, LaBrum & Beechwood,* for Chamber of Commerce of Philadelphia, amicus curiæ.

*Charles J. Biddle,* with him *Leslie M. Swope, David J. Smyth, Townsend, Elliott & Munson* and *Pepper, Bodine, Stokes & Hamilton,* for Philadelphia Saving Fund Society et al., interveners.

*Leslie M. Swope, Henry S. Drinker, Howard H. Yocum* and *Robert M. Blair-Smith,* for Investment Bankers Association et al., interveners.

*Robert Dechert,* with him *Francis L. Van Dusen, Carroll R. Wetzel* and *Barnes, Dechert, Price, Myers & Clark,* for Corporate Fiduciaries Association of Philadelphia, amicus curiæ.

*Floyd W. Tompkins,* with him *James P. Schellenger,* for Associated Hospital Service Employees Credit Union, intervener.

OPINION BY MR. JUSTICE LINN, February 14, 1950:

We took original jurisdiction of two bills in equity filed against the City of Philadelphia and certain officers of the city praying for decrees restraining threatened enforcement of a revenue ordinance approved December 13, 1939, as amended by an ordinance approved December

9, 1949, imposing income taxes and providing for their collection. The plaintiffs denied the power of the City to levy and collect taxes such as the plaintiffs averred the defendants were threatening to collect. The defendants filed answers admitting the averments of fact and pleading that the legislature had granted the asserted power. Whether the power asserted by the city was conferred by the legislature is the principal question now presented.

The ordinance, prior to the amendment of December 9, 1949, imposed a tax on earned income of individuals and of unincorporated businesses; corporations were excluded. That ordinance was considered in *Breitinger v. Philadelphia*, 363 Pa. 512, 70 A. 2d 640, and in *Murray v. Philadelphia*, 363 Pa. 524, 70 A. 2d 647 (1950). The present suits result from the amendment of December 9, 1949, which, for present purposes, may be said to have attempted to do two things: first, to increase the rate of taxation from 1% to 1¼%, and second, to include among the subjects of taxation many subjects that were not taxed by the ordinance before it was amended. The plaintiffs do not challenge the increase in the rate of 1¼% for taxes which the city has power to impose, but they deny the power of the city to impose the general income tax imposed by the amendment. The purpose of amending the ordinance was to tax many not taxed before.

Section 3 of the Ordinance provides for the imposition of a tax of 1¼% on: "(c) . . . the net profits earned after January 1, 1949, of businesses . . . conducted by such residents [of Philadelphia]; on (d) the . . . net profits earned after January 1, 1949, of businesses . . . conducted in Philadelphia by non-residents; and (e) at the rate of one and one-quarter per centum on all other net income derived after January 1, 1949, from any source whatsoever not provided for in (a), (b), (c) and (d) by persons who reside in Philadelphia,

and non-residents who derive such net income in Philadelphia.

"The tax levied under (a) and (b) herein shall relate to and be imposed upon salaries, wages, commissions and other compensation paid by an employer or on his behalf to any person who is employed by or renders services to him. The tax levied under (c) and (d) herein shall relate to and be imposed on the net profits of any business, profession or enterprise carried on by any person as owner or proprietor, either individually or in association with some other person or persons. The tax levied under (e) herein shall relate to and be imposed upon all other net income derived from any source whatsoever not provided for in (a), (b), (c) and (d) by any person."

Section 2 defines "person" as "every natural person, copartnership, fiduciary, association or corporation." It defines "resident" as "an individual, copartnership, association, corporation, or other entity domiciled in the City of Philadelphia."

A number of parties were allowed to intervene.[1] The cases were heard together and will be disposed of in one opinion. We are aware of the importance, to the city and to the taxpayers, of the questions involved and have considered them in the light of the arguments presented on behalf of the city and of all parties and interveners. We are all in agreement with the conclusion which we have reached.

---

[1] They are The Philadelphia Saving Fund Society, The Western Saving Fund Society of Philadelphia, The Beneficial Saving Fund Society of Philadelphia, Saving Fund Society of Germantown and its Vicinity, F. W. Hoffman Co., Inc., Corporate Fiduciaries Association of Philadelphia, Investment Bankers Association, Philadelphia-Baltimore Stock Exchange, National Association of Securities Dealers, Inc., Chamber of Commerce of Philadelphia, and Associated Hospital Service Employees Credit Union.

The city agrees that it cannot impose the challenged taxes unless it can find the power to do so in the Sterling Act.[2] This statute empowers City Council "to levy, assess and collect . . . taxes on persons, transactions, occupations, privileges, subjects and personal property, within the limits of such city . . . except that . . . council shall not have authority . . . [to tax] a privilege, transaction, subject or occupation, or on personal property, which is now or may hereafter become subject to a State tax or license fee."

As the decision must turn on the interpretation required to be given to that statute, we shall repeat the rules of interpretation that must be applied. In *Breitinger v. Phila.*, 363 Pa. 512, 514, 70 A. 2d 640 (1950), we said: "Two fundamental principles should be kept in mind in considering the ordinance and its administration. The first measures the city's power to tax; the second prescribes strict construction. We said, in Hillman Coal & Coke Co. v. Jenner Twp. et al., 300 Pa. 108, 112, 150 A. 293 (1930), ' "it is a principle universally declared and admitted that municipal corporations can levy no taxes, general or special, upon inhabitants, or their property, unless the power be plainly and unmistakably conferred": 4 Dillon on Municipal Corp. 2398. And the grant of such right is to be strictly construed, and not extended by implication: Com. v. P. R. T. Co., 287 Pa. 190 [134 A. 455 (1926)].' See Rieck-McJunkin Dairy Company Mercantile Assessment Case, 156 Pa. Superior Ct. 9, 12, 39 A. 2d 259 (1944)." In *Scranton v. O'Malley Mfg. Co.,* 341 Pa. 200, 19 A. 2d 269 (1941) the rule of strict construction was stated as follows: "Tax statutes should receive a strict construction: Boyd et al. v. Hood et al., 57 Pa. 98 [1868]. In cases of

---

[2] Approved August 5, 1932, Special Session, P. L. 45, section 1, 53 PS 4613.

doubt the construction should be against the government: Gould v. Gould, 245 U. S. 151, 153, 38 S. Ct. 53 [1917]; U. S. v. Merriam, 263 U. S. 179, 188, 44 S. Ct. 69 [1923]; Com. v. P. R. T. Co., 287 Pa. 190, 196, 134 A. 455 [1926]. While it is the duty of every citizen to bear his just share in supporting the government, he cannot be compelled to do so except in a way provided by a statute." See also *Callery's Appeal*, 272 Pa. 255, 272, 116 A. 222 (1922); *Com. v. P. R. T. Co.*, 287 Pa. 70, 74, 134 A. 452 (1926); *Arbuckle's Estate*, 324 Pa. 501, 505, 188 A. 758 (1936); *Krause's Estate*, 325 Pa. 479, 483, 191 A. 162 (1937).

In ascertaining the scope of the taxing power conferred, the court must deal with the realities of the situation and may not be misled by ambiguous words used to describe taxes in other contexts. It is often said that taxation is a practical matter, frequently arbitrary and illogical, and that words used to describe taxes in one context are not always used in the same sense nor with the same meaning in another.[3] We must, therefore,

---

[3] *Philadelphia v. Samuels*, 338 Pa. 321, 324, 12 A. 2d 79 (1940); *Arrott's Estate*, 322 Pa. 367, 371, 185 A. 697 (1936); see *Lawrence Township School District Tax Case*, 362 Pa. 377, 67 A. 2d 372 (1949); *Commonwealth v. Electrolux Corp.*, 362 Pa. 333, 67 A. 2d 105 (1949); *Federal Drug Co. v. Pittsburgh et al.*, 358 Pa. 454, 57 A. 2d 849 (1948); *Commonwealth v. Union Trust Co.*, 345 Pa. 298, 27 A. 2d 15 (1942); *Commonwealth v. Warner Brothers*, 345 Pa. 270, 27 A. 2d 62 (1942); *Blauner's, Inc., v. Philadelphia*, 330 Pa. 342, 198 A. 889 (1938).

In construing a license tax upon the business of manufacturing distilled spirits and upon the business of owning and storing such spirits in bonded warehouses, Mr. Justice BRANDEIS said in *Dawson v. Kentucky Distilleries Co.*, 255 U. S. 288, 294, 41 Sup. Ct. 272, 65 L. Ed. 638 (1921), " '. . . The whole value of the whisky depends upon the owner's right to get it from the place where the law has compelled him to put it, and to tax the right is to tax the value.' To levy a tax by reason of ownership of property is to tax the property. Compare Thompson v. Kreutzer, 112 Mississippi 165; Thompson v. McLeod, 112 Mississippi, 383. It can not be made an occupation or license tax

understand what was intended by the Sterling Act in which the words to be defined were used.

The legislative prohibition "that such council shall not have authority" to tax anything "which is now or may hereafter become subject to a State tax or license fee" was intended to prevent double taxation of the same thing; in other words, the city was instructed that it could not tax subjects taxed by the state. The right of the state was paramount. If, therefore, the tax proposed to be collected pursuant to the amended ordinance re- sults in such double taxation, it is unauthorized and must be restrained. So much was conceded at the argument by counsel for the city.

In determining whether double taxation results, whether the city tax conflicts with that imposed by the state, the practical operation of the two taxes is con- trolling as against mere difference in terminology from time to time employed in describing taxes in various cases. This is illustrated by *Arrott's Estate*,[4] 322 Pa. 367, 185 A. 697 (1936). See also *Com. v. Union Trust Co.*, 345 Pa. 298, 307-8, 27 A. 2d 15 (1942).

The plaintiffs, Mr. and Mrs. Murray, receive divi- dends from domestic corporations[5] that pay a capital

---

by calling it so. See Flint v. Stone Tracy Co., 220 U. S. 107, 148-150; Zonne v. Minneapolis Syndicate, 220 U. S. 187; United States v. Emery, Bird, Thayer Realty Co., 237 U. S. 28. The language of the emergency clause in the act discloses that the Legislature considered that it was, in fact, taxing the whisky."

[4] In this case we said, p. 371, "But in considering the collateral matter with which we are here concerned, namely, whether the holders of shares of a corporation which pays a franchise tax are subject to a personal property tax, we are not bound by the fact that the one is denominated a property tax and the other a franchise tax, nor can we refuse to consider the subject matter of the tax imposed on the corporation, regardless of the term by which it is called."

[5] In their bill they averred that they received income from shares of stock of domestic corporations, of foreign corporations doing busi- ness in Pennsylvania, of foreign corporations not doing business in

stock tax pursuant to the Act of June 1, 1889, P. L. 420, as amended, 72 PS 1871, and, therefore, contend that such income so being taxed by the State, is not a subject which the Sterling Act allows the city also to tax.

For years it has been the law that the state tax on capital stock is a tax on the property of the corporation: *Commonwealth v. Standard Oil Co.*, 101 Pa. 119, 145 (1882); *Peoples Natural Gas Co. v. Pittsburgh*, 317 Pa. 1, 6-7, 175 A. 691 (1934); *Philadelphia v. Samuels*, 338 Pa. 321, 325, 12 A. 2d 79 (1940); *Lawrence Twp. School District Tax Case*, 362 Pa. 377, 381, 67 A. 2d 372 (1949). This the city concedes, but its counsel denies the legal consequences of the fact that a tax on the capital stock is a tax on the property of the corporation. We must reject the city's contention. The stockholders, who are the owners of the capital stock, have an equitable or beneficial interest in the property represented by the shares of stock; *Revloc Supply Co. v. Troxell*, 281 Pa. 424, 126 A. 774 (1924); see Vol. 11 *Fletcher, Cyclopedia of Corporations*, sec. 5100, p. 88 et seq. The capital stock tax, though assessed against the corporation, has been regarded as a tax on the stock in the hands of the shareholders. In *Commonwealth v. Fall Brook Coal Company*, 156 Pa. 488, 495, 26 A. 1071 (1893), this Court said: "It is clear therefore that to tax the capital stock in the hands of the corporation, and then tax the owners of the parts or shares into which it is divided, upon their respective holdings in the same capital, is double taxation pure and simple." In *Commonwealth v. Lehigh Coal & Navigation Company*, 162 Pa. 603, 609 et seq., 29 A. 664 (1894), this Court said: "Capital invested in corporate stock, like capital invested in bonds, mortgages, munici-

---

Pennsylvania, state and national banks, from bonds subject to the corporate loans tax, and from bonds not subject to the corporate loans tax.

pal loans and the like, should pay taxes once. Whether these are paid by the holders of the stock for their respective interest, or by the corporation itself as the agent and representative of all its shareholders, is of no possible consequence to the owners of the property. It is more convenient for the state to keep its accounts with the corporations, and to collect its taxes on corporate property from the officers of the corporation and in a lump, than to collect it in small sums from many shareholders." As early as 1868,[6] legislation relieved stockholders from the personal property tax on shares of stock of corporations liable to tax on their capital stock, and it was said: "The policy arose out of the recognized identity of the capital stock and the shares composing it as one and the same subject, so that the taxation of the one is the taxation of the other and that to tax both would amount to double taxation": *Commonwealth v. Shenango Furnace Co.*, 268 Pa. 283, 285, 110 A. 721 (1920).

The city contends that the ordinance makes "a personal levy against the shareholders who own the stock . . ." The rules of strict construction that we must apply in determining the scope of the taxing power conferred by the Sterling Act require that we reject the contention. This is not to deny that the corporation is an entity separate from its stockholders. The popular understanding, though inaccurate technically, is that the property of the corporation is owned by all its stockholders.[7] The dividend or income is the part of that

---

[6] Act of January 3, 1868, P. L. 1318 (now repealed).

[7] Stockholders may agree among themselves informally to distribute assets as dividends without going through the form of corporate action: see *Young v. Bradford County Tel. Co.*, 341 Pa. 394, 379, 19 A. 2d 134 (1941) ; *Reading Trust Co. v. Reading Iron Works*. 137 Pa. 282, 21 A. 170 (1890) ; *Childs v. Adams*, 43 Pa. Superior Ct. 239, 247-248 (1910) ; Vol. 11, Fletcher, Cyclopedia of Corporations, sec. 5350, p. 875.

property distributed from time to time to the stockholders. When the corporation pays to its stockholders income out of the property on which the capital stock tax has been paid, the city may not again tax the income in the hands of the stockholder; and the reason is that the Sterling Act did not confer the power to tax the "subject" that the state had taxed; on the contrary, tax was prohibited. The dividend was income created by the state-taxed property; it was paid because of, and in proportion to, the stockholders' interest in the corporate property. In *Kelley v. Kalodner*, 320 Pa. 180, 181 A. 598 (1935), it was decided after mature consideration of divergent views, that a tax on income is a tax on the property producing the income. It is immaterial, in construing the Sterling Act, that the income has been transferred from the corporation to its beneficially interested stockholders. Chief Justice FRAZER said, in *Kelley v. Kalodner*, at pp. 186-187, ". . . we are inevitably impelled to the conclusion that an income tax is a property tax. This result seems particularly clear in so far as a tax upon the income from real and personal property is concerned. The act in question [the graduated income tax Act of July 12, 1935, P. L. 970] places a tax upon all income derived from any source whatever, subject, of course, to stated exemptions and deductions. The income from real estate, for example, is not exempt. A tax upon the income from such property necessarily diminishes its value in the hands of the owner and to that extent is a tax upon the land itself. In like manner a tax upon the income from bonds and stocks is a tax upon the securities themselves (citing authorities)."

For the reasons stated, the defendants may not proceed under the ordinance, as recently amended, to collect income taxes on dividends received from corporations paying a capital stock tax to the Commonwealth.

The same plaintiffs receive income from corporations that pay corporate net income taxes pursuant to the Act of May 16, 1935, P. L. 208, as amended, 72 PS 3420 et seq. and contend that this income is not a taxable subject under the Sterling Act. The city makes the same objection to this contention that was made with respect to income on shares of corporations paying the capital stock tax. The statute requires corporations subject to its provisions to pay "for the privilege of doing business in this Commonwealth . . . a State excise tax . . . upon all net income received by, and accruing to such corporation . . ." [8] This Act was considered in *Turco Paint & Varnish Co. v. Kalodner,* 320 Pa. 421, 184 A. 37 (1936) ; *Com. v. Warner Bros. Theatres, Inc.,* 345 Pa. 270, 27 A. 2d 62 (1942). The tax is paid out of the corporate property and, like other state taxes, becomes a preferred lien on such property if unpaid.[9] The income, having been deducted from already taxed corporate property for purposes of distribution to the beneficial owners, is property which the Sterling Act prohibits the city from taxing. In construing the Act, it is immaterial that state taxes have been referred to as excise or franchise taxes or by any other adjective; the reality controls. The fact that this tax is paid to the state conclusively shows that the city has no jurisdiction to tax the corporate income. In *Federal Drug Company v. Pittsburgh,* 358 Pa. 454, 456, 57 A. 2d 849 (1948) this Court said: "Whether [the corporate net income tax] be regarded as a property tax or an excise tax, the tax imposed was upon *property*." See *Blauner's, Inc., v. Philadelphia,* 330 Pa. 340, 344, 198 A. 889 (1938) ; *Philadelphia v. Samuels,*

---

[8] Section 3, as amended, 72 PS 3420c.

[9] See *Harper v. Consolidated Rubber Co.,* 284 Pa. 444, 131 A. 356 (1925) ; *Com. v. Central Realty Co. et al.,* 338 Pa. 172, 12 A. 2d 312 (1940) ; Act of June 15, 1911, P. L. 955, sec. 1, as amended, 72 PS 3342; Act of April 9, 1929, P. L. 343, sec. 1401, as amended, 72 PS 1401.

338 Pa. 321, 12 A. 2d 79 (1940). The defendants may not collect income taxes on income received by plaintiffs or interveners from corporations paying the corporate net income tax.

Plaintiffs, receiving income on shares in corporations that pay a franchise tax, deny, on that ground, the city's power to tax such income. The franchise tax is imposed by the same Act of Assembly that imposes the capital stock tax and was obviously devised to reach the property of foreign corporations as the equivalent of the capital stock tax: *Arrott's Estate,* 322 Pa. 367, 371, 185 A. 697 (1936); *Commonwealth v. Union Trust Co. of Pittsburgh,* 345 Pa. 298, 307, 27 A. 2d 15 (1942). What has been said concerning the city's lack of power to tax income paid by corporations paying capital stock or corporate net income taxes applies with equal force to this class.

Plaintiffs were not engaged in the real estate business (see *Murray v. Philadelphia,* 363 Pa. 524, 70 A. 2d 647 (1950)), but they received rent from real estate and contend that this income is not taxable under the amended ordinance. The legislature has provided a method (Act of June 27, 1939, P. L. 1199, 53 PS 4805.1 et seq.[10]) for taxing property in Philadelphia. *Vollmer*

---

[10] The title to the Act is, "An Act Relating to the assessment of real and personal property and other subjects of taxation in counties of the first class; providing for the appointment of members of the board of revision of taxes by the judges of the courts of common pleas; providing for the appointment, by the board, of personal property assessors, real estate assessors and assistant real estate assessors, clerks and other employes; fixing the salaries of members of the board, assessors and assistant assessors and providing for the payment of salaries and expenses from the county treasury; prescribing the powers and duties of the board and of the assessors, the time and manner of making assessments, of the revision and notice of assessments and of appeals therefrom; prescribing the records of assessments; and repealing existing laws."

*v. Philadelphia,* 350 Pa. 223, 38 A. 2d 266 (1944); *Liebman v. Board of Revision,* 355 Pa. 42, 48 A. 2d 866 (1946).

Taxation of the income from real estate is taxation of the real estate which produces the income: *Kelley v. Kalodner,* 320 Pa. 180, 181 A. 598 (1935); *Murray v. Philadelphia,* 363 Pa. 524, 70 A. 2d 647 (1950). It is as true now, as it was in Coke's [11] time, that land includes "the profits thereof." In *Pollock v. Farmers' Loan & Trust Co.,* 157 U. S. 429, 580, 15 S. Ct. 673, 39 L. Ed. 759 (1894), FULLER, C. J., said: "Unless, therefore, a tax upon rents or income issuing out of lands is intrinsically so different from a tax on the land itself that it belongs to a wholly different class of taxes, such taxes must be regarded as falling within the same category as a tax on real estate *eo nomine.* The name of the tax is unimportant. The real question is, is there any basis upon which to rest the contention that real estate belongs to one of the two great classes of taxes, and the rent or income which is the incident of its ownership belongs to the other? We are unable to perceive any ground for the alleged distinction. An annual tax upon the annual value or annual user of real estate appears to us the same in substance as an annual tax on the real estate, which would be paid out of the rent or income. This law taxes the income received from land and the growth or produce of the land."

We find nothing in the Sterling Act, strictly construed, which authorizes the city to tax plaintiffs' income from real estate. The city contends that the assessment law does not apply to a tax on rents, that rents

---

[11] "But, if a man seised of lands in fee by his deed granteth to another the profit of those lands, and to have and to hold to him and his heires, and maketh livery secundum formam chartae, the whole land itselfe doth passe; for what is the land but the profits thereof; for thereby vesture, herbage, trees, mines, and all whatsoever parcell of that land doth passe." Co Lit 4.b.

are not real property. But we cannot adopt that argument because, in this Commonwealth, we have long been committed to the application of the principle of economics that a tax on the income produced by property is a tax on the property whether real or personal. Cases cited above illustrate the application of the principle. Examined from another point of view, the city's contention would fail. Article IX, section 1, of the Constitution provides: "All taxes shall be uniform upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws . . ." If we made the unjustified assumption that the Sterling Act authorized the challenged tax, we should still be required to hold that the city has not shown that it is consistent with the uniformity requirement of the constitution.[12] Classification of owners into those who occupy their dwelling houses and those who let them to tenants will not solve the difficulty, because such classification is merely incidental and is not based on a necessity growing out of the circumstances: compare *Commonwealth v. Girard Life Insurance Co.*, 305 Pa. 558, 158 A. 262, 83 A. L. R. 460 (1932), affirmed 287 U. S. 570, 53 S. Ct. 94, 77 L. Ed. 501 (1932).

Plaintiffs receive dividends from state banks and from national banks which, they contend, the city may not tax because, as stockholders, they are taxed pursuant to the Act of July 15, 1897, P. L. 292, as amended, 72 PS 1931, requiring the banks to collect and to pay such

[12] This may be illustrated by supposing each of two persons to own similar houses, of the same value, with the same assessment, paying the same tax but one occupied by the owner and the other by a tenant paying rent. If the lessor-owner must pay to the city, as a tax, part of the rent received by him, he will have less out of his property than the occupying owner, though both pay the same tax on the same assessment.

taxes: see *Com. v. Schuylkill Trust Co.,* 315 Pa. 429, 433, 173 A. 309 (1934), reversed in 296 U. S. 113, 56 S. Ct. 31, 80 L. Ed. 91 (1935); *Merchants & Manufacturers' Bank v. Penna.,* 167 U. S. 461, 17 S. Ct. 829, 42 L. Ed, 236 (1896); *Com. v. Schuylkill Trust Co.,* 327 Pa. 127, 193 A. 638 (1937), affirmed in 302 U. S. 506, 58 S. Ct. 295, 82 L. Ed. 392 (1937). The amendment of 1945, P. L. 908, specifically provides that on payment of the tax on shares "the shares, and so much of the capital and profits of such bank or savings institution as shall not be invested in real estate, shall be exempt from local taxation under the laws of this Commonwealth." They also receive income from bonds of corporations which are subject to the corporate loans tax pursuant to the Act of June 22, 1935, P. L. 414, as reënacted and amended by the Act of May 18, 1937, P. L. 633, 72 PS 3250-10. This tax is imposed for state purposes and neither such bonds, nor the income therefrom, can be taxed by the state's municipal agent because the Sterling Act prohibits it.

The city refers to *McClelland v. Pittsburgh,* 358 Pa. 448, 57 A. 2d 846 (1948), as controlling in our consideration of "the power to tax income and dividends from intangibles which are subject to county personal property tax." In that case the grounds of attack, which were rejected, were different from the objections presented in the present cases. This Court is not precluded by that case from dealing with the objections presented in this and not presented in that case: see *Wilson v. Phila. School District,* 328 Pa. 225, 227-228, 195 A. 90 (1937); *Com. ex rel. Margiotti v. Lawrence,* 326 Pa. 526, 530, 193 A. 46 (1937); *Brolasky's Estate,* 302 Pa. 439, 153 A. 739 (1931); *Davison v. Chic. & N. W. Ry. Co.,* 100 Neb. 462, 160 N. W. 877, L. R. A. 1917C 135 (1916); *Adams v. Yazoo etc. R. R. Co.,* 77 Miss. 194, 24 So. 200, 60 L. R. A. 33 (1899); *Remey v. Iowa Cent.*

*Ry. Co.,* 116 Iowa 133, 89 N. W. 218 (1902) ; *City Council of Anderson v. Fowler,* 48 S. C. 8, 25 S. E. 900 (1896) ; *Virtue v. Essex County,* 67 N. J. L. 139, 50 A. 360 (1901).

Sheridan Transportation Company, plaintiff at number 144, is a corporation of the State of Delaware, with its principal office in the city of Philadelphia. It denies the power of the city to tax the income of corporations which are liable to taxation by Pennsylvania under the provisions of the foreign corporation franchise tax Act of June 1, 1889, P. L. 420, as amended, 72 PS 1871 (b) and the corporate net income tax Act of May 16, 1935, P. L. 208, as re-enacted and amended, 72 PS 3420 et seq. With respect to this plaintiff, the city says : "The question directly involved is whether the said foreign corporation Franchise Tax is a tax on income, for it is quite obvious that if it is not a tax on income, then the amendatory ordinance of December 9, 1949, taxing net income derived from business in Philadelphia by foreign corporations is not a duplication of the foreign corporation Franchise Tax." Earlier in this opinion, it was noted that the franchise tax was regarded as an equivalent of the capital stock tax and that, while considered an excise tax in some contexts, in others it was regarded as a tax on property. As the capital stock tax and the franchise tax are paid out of the corporate property, the income is not taxable by the city.

F. W. Hoffman Co. Inc., intervener, a Pennsylvania Corporation with its principal office in Philadelphia, subject, like all domestic corporations, to the capital stock tax, also pays the corporate net income tax. For reasons stated earlier in this opinion, the city has no power to tax its income.

The intervening saving fund societies, the Philadelphia Saving Fund Society, the Western Saving Fund Society of Philadelphia, The Beneficial Saving Fund Society of Philadelphia and Saving Fund Society of Germantown and its Vicinity, deny the power to tax

their respective incomes and support their position by reference to the Act of June 1, 1889, P. L. 420, sec. 27, as amended by Act of May 23, 1945, P. L. 910, sec. 1, 72 PS 2241. This Act provides that these parties shall annually, "make report to the Department of Revenue setting forth the entire amount of net earnings or income received by said company . . . from all sources during the preceding year . . .; and upon such net earnings or income, the said company . . . shall pay into the State Treasury, through the Department of Revenue, for the use of the Commonwealth, . . . three per centum upon such annual net earnings or income . . ." The city's proposed tax is "on the net profits earned after January 1, 1949, on businesses, professions, or other activities conducted by such residents" (which includes corporations); the term "net profits" is defined as "net gain from the operation of a business . . . after provision for all costs and expenses incurred in the conduct thereof . . ." If these interveners are taxable pursuant to the amended ordinance, they will be required by the statute to pay 3% to the state and by the ordinance to pay 1¼% to the city on precisely the same report or return; a copy of one of these reports was filed with the court. The state tax is on net earnings which fact prevents the city from also taxing the net earnings. See generally, *Blauner's, Inc., v. Phila.*, 330 Pa. 342, 198 A. 889 (1938); *Philadelphia v. Samuels,* 338 Pa. 321, 12 A. 2d 79 (1940); *Federal Drug Co. v. Pittsburgh,* 358 Pa. 454, 57 A. 2d 849 (1948); *Lawrence Twp. School District Case,* 362 Pa. 377, 67 A. 2d 372 (1949).

The intervening Associated Hospital Service Employees Credit Union, a corporation created pursuant to the Act of May 26, 1933, P. L. 1076, as amended by Act of May 18, 1937, P. L. 713, 14 PS 201 et seq., avers that it has savings of about $19,000; that it is exempt by the following provision in the incorporation statute (section 23 as amended, 14 PS 223): "its assets . . . shall not

be subject to taxation except as to real estate owned by it. The shares of a credit union shall not be subject to a capital stock bonus tax or a stock transfer tax . . ." That statute is conclusive; the city's brief contains no argument against it.

It is clear from what has been said that most of the amendment to the ordinance must be set aside as unauthorized by the Sterling Act. We have considered the severability provision in section 7 and can give effect to it only with respect to the increase in the rate of taxation from 1% to 1¼%. In other respects the amendment is too vague and uncertain in its provisions to be enforced. The principle to be applied by this court in dealing with severability provisions was stated in *Kelley v. Kalodner*, 320 Pa. 180, 191, 181 A. 598 (1935) as follows: "Even though the operation of the act might possibly be valid in some instances, the good and the bad are so inseparably interwoven that we are obliged to reject the levy in its entirety." In *Willcox v. Penn Mutual Life Ins. Co.*, 357 Pa. 581, 595, 55 A. 2d 521 (1947), Mr. Justice STERN quoted from *Miller v. Belmont Packing & Rubber Co.*, 268 Pa. 51, 63, 110 A. 802, 806 (1920) as follows: "Where a statute is 'so vague, indefinite and uncertain that the courts are unable to determine, with any reasonable degree of certainty, what the legislature intended, or is so incomplete or conflicting and inconsistent in its provisions that it cannot be executed, it will be declared inoperative.' "

The ordinance, after providing for particular levies in classes (a), (b), (c) and (d) continues and applies the tax to "all other net income derived from any source whatsoever not provided for in (a), (b), (c) and (d) . . ." In section 5 the ordinance states that it shall not apply "to any other person or property as to whom or which it is beyond the legal power of the City of Philadelphia to impose the tax or duties provided for in this ordinance." Between the two provisions so quoted,

i.e., "all other net income . . . from any source whatsoever . . ." etc. and the clause excepting property "beyond the legal power of the City" there is an ill-defined and uncertain area in which the court cannot exercise the legislative function delegated by the state to city council. The vagueness is criticized in one of the briefs as follows: "The Ordinance is devoid of any provisions for determining profit or net income. The Ordinance includes two sentences defining net profits and net income. The definition of net profits is confined to gain from the operation of a business. Consequently, the only definition of net income is the single sentence, which provides: 'Net Income. The gain derived from capital, labor, or from both combined, after deducting the reasonable and necessary expenses incurred in the production of such income either paid or accrued in accordance with the accounting system used and without deduction of taxes based on income.' There are four specific provisions dealing with the exclusion of certain types of income. These deal with services performed, or goods sold, outside of the City; premiums on insurance upon risks outside the City; exclusions of certain portions of the net income and net profits of estates and trusts, etc., and the exclusion of the gain of non-resident renters of safe deposit boxes from securities deposited therein, merely because such boxes are located within the City. None of these provisions aid in determination of what is net income, or how it shall be determined. . . . the Ordinance makes no provision as to the basis to be used in determining gain in any of the various circumstances by which property may be acquired. No method is set forth to determine the basis of property received by gift or inheritance. No provision is made with respect to depreciation. No list of deductible or non-deductible items to be used in determining net income are specified. The Ordinance does not prescribe what adjustments to the basis of property are required or permitted for cap-

ital expenditures or for receipts. The Ordinance does not state whether exchanges of property are equivalent to taxable sales. The Ordinance does not state whether capital losses are deductible in determining capital gains or net income."

In another brief, the following pertinent criticism is made: "The language of this Ordinance, as it concerns the taxation of trusts and estates and their beneficiaries, is so vague, indefinite, uncertain and contradictory that it is impossible to determine what City Council really intended. The sections relating to this matter are subject to the following four possible but inconsistent interpretations: (a) City Council intended to tax *both* the fiduciaries and the beneficiaries; (b) City Council intended to tax the *fiduciaries only* on the net income received by them; (c) City Council intended to tax the *beneficiaries only* on the net income received by them; or (d) City Council intended the trustees to *deduct the tax payable by the beneficiaries* on the income payable to them."

Other adverse criticisms might be mentioned. The argument of the city would seem to indicate that the respects in which the ordinance is considered to be vague may be cured by regulations of the Receiver of Taxes. The city council, as the agent of the state, has no authority to delegate to the Receiver of Taxes its own legislative duties. All that the receiver can properly be asked to do is prepare administrative regulations.

We must sustain the contentions made on behalf of the plaintiffs and the interveners as stated in this opinion but we shall not at this time issue injunctions against the defendants; we shall assume that defendants will comply. If any question on that subject arises, application may be made. Costs to be paid by the City of Philadelphia.