## Hoffman v. Norristown Borough

684

*High, Swartz, Childs & Roberts,* for plaintiff.
*Paul P. Wisler,* for defendants.

FORREST, J., May 24, 1961.—Plaintiff filed his complaint in equity, praying for an injunction restraining defendant borough and its treasurer and eight of its 12 councilmen, from levying any taxes or appropriating any money during the current year for debt service. Defendants, in answer to the complaint, raise the following issues which are material:

1. What amount is appropriated in the borough's 1961 budget for interest payments?

2. Is it necessary or proper to accumulate funds in 1961, by a budgetary item and tax levy based thereon, for the borough's sinking fund?

3. In determining what tax rate to impose for debt service, (a) is it necessary to take into account the sum payable annually by the West Norriton Sewer Authority under an agreement with defendant borough, and (b) has borough council taken into account the income from investments presently held in the sinking fund?

4. Did borough council err in appropriating $15,-000 for debt service, reducing principal on the 1960 $300,000 bond issue, when the said amount of $15,000 is payable on September 15, *1962,* and not in *1961?*

5. Did borough council err in *failing* to appropriate $4,695 for payment of interest on the said 1960 bond issue?

## Findings of Fact

1. Plaintiff, John H. Hoffman, owns real estate in the Borough of Norristown.

2. Defendant, Borough of Norristown, is a municipal corporation organized by and under the laws of the Commonwealth of Pennsylvania.

3. Defendant, Oscar T. Rahn, is treasurer of said borough.

4. Defendants, Howard S. Poley, Francis A. Orr, Philip M. Couchara, W. Earl Seltzer, Claude Tyson, Albert M. Conrad, Michael N. Ciccarone and Samuel Kelso, are eight of the 12 duly elected councilmen of said borough.

5. On June 27, 1950, borough council enacted ordinance no. 897, authorizing and directing the issuance of general obligation bonds in the maximum amount of $1,350,000 for the purpose of providing funds for the acquisition of land and for construction of a sewage treatment plant and alterations to an existing plant. The ordinance provided for bonds to mature serially, beginning in 1951 and annually thereafter 'til 1970, with right of redemption earlier at the option of the borough. Section 3 of the ordinance provided for $70,-000 of maturities on July 1, 1961.

Section 9 of the ordinance levied an annual tax in specified aggregate amounts for each year from 1951 to 1970 inclusive, the amount for 1961 being $79,-993.75, and provided that such tax "shall be applied exclusively to the payment of the interest covenanted to be paid on the bonds authorized hereby and to the principal thereof at maturity."

Section 10 provided for establishment of a sinking fund, to be known as "Sinking Fund—Bond Issue of

1950", and provided that such "fund shall be applied exclusively to the payment of the interest covenanted to be paid upon the bonds authorized hereby and to the principal thereof at maturity and to no other purpose whatsoever, except as may be authorized by Article IV of the Act of June 25, 1941, P. L. 159, until the same shall have been fully paid."

6. On December 13, 1960, borough council enacted ordinance no. 1502 authorizing and directing the issuance of general obligation bonds in the maximum amount of $300,000 for funding unfunded debt and certain municipal improvements. The ordinance provided for bonds to mature serially beginning January 15, 1962, and annually thereafter 'til 1981, with right of redemption prior to maturity at the option of the borough.

Section 3 of the ordinance provided for $15,000 of maturities on January 15, 1962. Section 11 of the ordinance levied an annual tax in specified aggregate amounts each year from 1961 to 1981, inclusive. The amount for 1961 is $4,695. Section 12 of the ordinance provides for the establishment of a sinking fund, to be known as "Sinking Fund—Funding and Improvement General Obligation Bonds, Series of 1961", and contains a provision as to application of fund similar to that of ordinance no. 897.

7. On February 21, 1961, borough council adopted a motion approving the budget for 1961 and a tax ordinance by motion carried by a vote of eight to four. The eight votes in favor of the motion were the votes of the eight councilmen named as defendants.

8. On March 7, 1961, the burgess of the borough vetoed the tax ordinance. Borough council promptly passed the ordinance over the veto by a vote of eight to four, the four councilmen not defendants herein, voting against the passage of the ordinance.

9. The budget for 1961 shows estimated receipts from current tax levy for debt service @ 3¾ mills, aggregating $108,750. It shows, inter alia, the following allotments for appropriations:

| | |
|---|---:|
| Interest on temporary loans (tax anticipation notes) | $ 3,000.00 |
| Payment to sinking fund for interest on bonds. | 11,000.00 |
| Payment to sinking fund for principal bonds. | 95,000.00 |
| | $105,000.00 |

10. In preparing said budget, borough council estimated the said payment to sinking fund for interest on bonds as follows:

| | |
|---|---:|
| Issues of 1931 | $ 212.50 |
| Sewer issue—interest due July, 1961 | 4,712.50 |
| Sewer issue—interest due January, 1962 | 4,712.50 |
| New issue—interest due July 15, 1961 | 4,695.00 |
| New issue—interest due January 15, 1962 | 4,695.00 |
| Total | $ 19,027.50 |
| Less interest from invested funds | 8,027.50 |
| Balance to be raised by taxation | $ 11,000.00 |

11. The said estimated payment to sinking fund for principal is broken down as follows:

| | |
|---|---:|
| Serial Bonds floated 12/31/31—due December 1961 | $ 10,000.00 |
| Sewage Treatment bonds—due July 1, 1961 | 70,000.00 |
| New Issue of $300,000—due January 15, 1962 | 15,000.00 |
| | $ 95,000.00 |

12. The present balance in the sinking fund is $344,-718.75, more than 50 percent of the entire outstanding bonded indebtedness of the borough.

13. The said balance in the sinking fund was built up in part as follows:

(a) On December 23, 1953, a balance of $200,000 remaining from a grant by the Commonwealth was placed into this fund.

(b) The fund has earned approximately $6,000 in an exchange of government securities.

(c) West Norriton Sewer Authority under a written contract with the borough, dated March 18, 1953, as supplemented by agreement of July 7, 1953, has contributed $12,034 annually since 1958 and will continue to do so until 1970. These contracts contain no provision regarding allocation of payments.

## Discussion

The main thrust of plaintiff is that a municipality, which has a sinking fund which admittedly is greatly in excess of the requirements for interest and principal for the current year, and for the following year until the main stream of tax receipts is reached for the following year, may not lawfully levy a tax for the purpose of increasing the sinking fund. Plaintiff's rationale is that municipal improvements benefit the owners of real estate over a period of many years and that it is unjust to impose the full burden of paying for such improvements upon those who are owners during the first few years of such benefits.

" 'It is principle universally declared and admitted that municipal corporations can levy no taxes, general or special, upon inhabitants, or their property, unless the power be plainly and unmistakably conferred': 4 Dillon on Municipal Corp. 2398. And the grant of such right is to be strictly construed and not extended by

implication: Com. v. P. R. T. Co., 287 Pa. 190": Murray v. Philadelphia, 364 Pa. 157, 163 (1950).

" 'Generally speaking, a . . . municipality . . . may act only through powers that have been conferred on them by the legislature, or a necessary implication of power associated with a given function': . . .": Hillman Coal & Coke Co. v. Jenner Township, 300 Pa. 108, 112 (1930).

The Municipal Borrowing Law of June 25, 1941, P. L. 159, sec. 207, 53 PS §6207, provides:

"*An annual tax*, commencing the first fiscal year after such debt (of a municipality created by issuance of general obligation bonds) shall have been incurred or increased, *sufficient* for the payment of the interest thereon, . . . and the principal of such debt within the period for which such general obligation bonds may be issued, *shall be* forthwith *assessed* by the corporate authorities in the ordinance authorizing the issue of such bonds. The moneys arising from such tax, except such moneys as shall be required to repay to the general fund any sums advanced for the service of the debt prior to the collection of the first annual tax required by this section, and *except as otherwise provided in section 402 [53 PS §6402], shall be placed in a sinking fund* which shall be kept apart from all other moneys of the municipality and shall be applied only to the payment of interest and taxes on, and the principal of, such general obligation bonds or be invested in the manner provided by article four of this act [53 PS §§6401-6405].

"The *annual tax* shall be expressed as an amount of money to be raised by taxation in each succeeding year for principal, interest and taxes on such bonds, to the end that in each succeeding year the rate of taxation on each dollar of valuation may be adjusted so as to produce the amount specified in such tax levy. *The*

*corporate authorities shall include such tax levy within its annual tax levy.*" (Italics supplied.)

The manifest intent of legislature was to enforce sound fiscal management. Solvency of municipalities is important to the welfare of the citizenry. Thus, it is seen that borough council is duty bound in every ordinance authorizing the issue of general obligation bonds, to fix (assess) an *amount* to be collected annually which shall be *sufficient* for payment of interest and principal within the period for which the bonds may be issued. In other words, the minimum amount which shall be collected annually for such purpose is fixed by the ordinance authorizing the bond issue. The borough council cannot be compelled, in a later year, to reduce the budgetary amount of the annual collection for such purpose simply because the sinking fund has enjoyed a windfall, or has grown faster than was originally contemplated. Moreover, the Municipal Borrowing Law, sec. 402, as amended, 53 PS §6402, specifically provides:

"When the full requirement for debt service on account of any issue of bonds for any year and all prior years has been paid into the sinking fund or otherwise discharged, the annual tax of such year levied for and in conjunction with the issue of bonds shall no longer be dedicated to the payment of interest, principal and taxes on account of such bonds and need not be deposited in the sinking fund for said bonds, anything in this act to the contrary notwithstanding . . ."

We think it is implicit in section 402 above quoted, that the annual levy for bond interest and principal specified by the ordinance authorizing bond issues is not to be reduced on the application of a taxpayer who, rightly or wrongly, contends that the sinking fund has swollen beyond the requirements of the current year or even the requirements of the next succeeding year. The borough council, as soon as the full requirement

for debt service for the current year and all prior years has been paid into the sinking fund, is at liberty to apply the balance of the moneys collected on the levy for bond interest and principal to any other lawful and proper purpose. Plaintiff may contend that it is reprehensible to exact taxes on the representation that they will be used for the reduction of the public debt, and later to use the moneys for other purposes. We cannot agree. Countless factors may cause the borough council to revise its budgetary arrangements, once it has provided sufficient in the sinking fund to meet the lawful requirements of the bondholders and other lenders. Another lower court, in the only reported decision on point, has come to the same conclusion, stating:

"It is to be noted that the Act declares that the tax levied 'shall no longer be dedicated' to the payment of interest and principal. Revenue is dedicated when it is required by law to be applied to a specific [or] particular purpose. Clearly this Act does not declare that the tax shall no longer be levied; it simply provides that the corporate authorities may apply the tax to some other purpose, so long as there is no breach of contract with the bondholders." Berger v. Borough of West Hazleton, 43 Luz. 193, 194 (1953).

The legislature contemplated that the borough council might enlarge its sinking fund beyond the amount necessary to meet current maturities of principal and interest. Otherwise, there hardly would have been any reason for section 403 of the Municipal Borrowing Law, as amended, 53 PS §6403. This section provides, inter alia:

"Any moneys in the sinking fund not needed for the time being for any of the above purposes [payment of any taxes covenanted to be paid on the general obligation bonds for the payment of which such fund was created, payment of interest on such bonds and pay-

ment of the principal of such bonds at their maturity] may be invested in obligations issued by the United States of America and general obligation bonds of the Commonwealth of Pennsylvania or any political subdivision thereof, or in deposits in banking institutions or in shares of building and loan associations or federal savings and loan associations, the deposits or shares of which are insured by the Federal Deposit Insurance Corporation or the Federal Saving and Loan Insurance Corporation, respectively . . ."

The tenor and purpose of the Municipal Borrowing Law is to assure the *sufficiency* of the sinking fund. This law mandates the levy of a tax which is sufficient for the payment of interest, taxes and principal *"within the period* for which such general obligation bonds may be issued." A conservative budget is called for, not a precise computation which is, realistically, impossible of attainment. The law, sec. 211, 53 PS §6211, provides that the bonds "may be made callable in whole or in part . . . upon such interest date or dates as may be specified in the ordinance." Such a provision is statutory recognition that a sinking fund may grow faster than the requirements against it and, hence, that the fund may be used to retire callable bonds in *advance* of their maturity dates.

### Conclusions of Law

1. Equity has jurisdiction.

2. Defendant may lawfully levy taxes for the current year 1961 for debt service.

3. The complaint should be dismissed.

4. Plaintiff should pay the costs.

### Decree Nisi

And now, May 24, 1961, the complaint is dismissed, plaintiff to pay the costs. The prothonotary shall give prompt notice hereof to the parties. If no exceptions are filed within 20 days after such notice, the decree

nisi shall be entered by the prothonotary, upon prae-cipe, as the final decree.